Southern Industries, Inc., Respondent-Appellant, v Ernest Jeremias, Appellant-Respondent, et al., Respondents.

Second Department, December 29, 1978

### APPEARANCES OF COUNSEL

*Gitomer, Schwimmer & Gitomer, P. C. (Gary B. Berns* of counsel), for appellant-respondent.

*Otterbourg, Steindler, Houston & Rosen, P. C. (Abraham Kaplan* of counsel), for respondent-appellant.

### OPINION OF THE COURT

DAMIANI, J.

■ The principal issue in this case is whether a transfer of substantially all of the assets of an insolvent corporation to a director thereof in return for the satisfaction of an antecedent debt is barred by the fraudulent conveyance provisions of the Debtor and Creditor Law. We hold the transfer invalid.

Ernest Jeremias was an officer, director and major stockholder of a publicly held corporation named Mazel Knitting Mills, Inc. Jeremias had loaned the corporation substantially in excess of $200,000 and this debt was reflected in the corporate books. The petitioner, Southern Industries, Inc., was a supplier of yarn to Mazel Knitting Mills on an open account.

There came a time when Mazel Knitting Mills ceased to do business and, in August, 1976, a meeting of shareholders was called to deal with its troubled financial condition. At the meeting it was resolved that the corporation, through its board of directors, should sell all of its machinery, equipment, furniture and inventory and use the proceeds to satisfy creditors to the extent possible. On August 9, 1976, pursuant to this resolution, Jeremias, acting as president of Mazel Knitting Mills, sold all its furniture, fixtures, equipment, inventory and certain of its machinery to himself in consideration of the cancellation of $150,000 of the antecedent debt owed to him by the corporation.

Southern Industries was Mazel Knitting Mills' other major creditor. After the corporation ceased doing business, the account of Southern Industries remained unpaid and, in October, 1976, it commenced an action against Mazel Knitting

Mills. On December 2, 1976 judgment was entered in favor of Southern Industries and against Mazel in the sum of $31,062.89. Early in January, 1977 an execution on that judgment was issued to the Sheriff of Kings County and thereafter he entered Mazel's place of business and levied upon the entire contents of the premises. The Sheriff scheduled a sale for February 18, 1977.

On February 2, 1977, prior to the date fixed for the Sheriff's sale, a public auction was held at the instance of Jeremias, who contended that he, and not the corporation, was the owner of the property. The proceeds of the auction were in excess of $60,000.

After serving restraining notices, Southern Industries commenced this special proceeding pursuant to CPLR 5225 (subd [b]) against Jeremias and the auctioneers to compel them to satisfy its judgment from the proceeds of the auction. Upon consent of all the parties, the proceeding was dismissed as to the auctioneers upon condition that they deposit $35,000 of the proceeds with the Treasurer of Nassau County. After a hearing, Special Term awarded judgment to petitioner directing that its judgment against Mazel Knitting Mills be satisfied from the funds on deposit with the County Treasurer, together with interest, costs and disbursements, but denying petitioner's application for a counsel fee and Sheriff's poundage. Jeremias has appealed from so much of the judgment as is adverse to him and the petitioner has appealed from so much thereof as denies it a counsel fee and the Sheriff's poundage.

■ New York has adopted the provisions of the Uniform Fraudulent Conveyance Act as article 10 of the Debtor and Creditor Law. Section 276 of the Debtor and Creditor Law provides that every conveyance made with the *actual intent* to hinder, delay or defraud creditors is fraudulent and void. In this connection the actual intent to defraud consists of deception intentionally practiced to frustrate the legal rights of another (see 37 CJS, Fraud, § 2, subd b). A prime example of this type of fraud is where a debtor transfers his property to another while retaining the use thereof so as to continue in business free from the claims of creditors. The actual intent to defraud was not proven in this case. Mazel Knitting Mills did not transfer its property to Jeremias in order to put that property out of the reach of creditors while it still continued in business.

■ Section 273 of the Debtor and Creditor Law covers

constructive, as opposed to actual, fraud. Constructive fraud may be defined as a breach of a duty which, irrespective of moral guilt and intent, the law declares fraudulent because of its tendency to deceive, to violate a confidence or to injure public or private interests which the law deems worthy of special protection (37 CJS, Fraud, § 2, subds c, e). In substance, section 273 of the Debtor and Creditor Law provides that without regard to the actual intent to defraud, every convey-ance made by a person who is or will thereby be rendered insolvent is fraudulent as to creditors if made without "fair consideration." It appears that Mazel Knitting Mills was insolvent at the time of the transfer. It owed Jeremias in excess of $200,000 and another $30,000 to the petitioner, but its assets, consisting of furniture, fixtures, equipment, inven-tory and machinery, brought only $60,000 at a subsequent auction sale. In any event, there is no doubt that the transfer of substantially all of its assets to Jeremias left nothing with which to pay the debt it owed to petitioner. Since at the time of the transfer Mazel Knitting Mills was, or was rendered, insolvent, that transfer must be set aside if it was made without fair consideration.

Subdivision a of section 272 of the Debtor and Creditor Law provides, in relevant part, that "fair consideration" is given for "property, or obligation": "When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied".

█ Special Term held that the cancellation of an antecedent debt owed to a major stockholder of a corporation was *not* a fair equivalent for the property transferred to his ownership. It has been held that for the purpose of section 272 of the Debtor and Creditor Law, the amount realized at the forced sale of previously transferred property does not necessarily reflect the ordinary market value of such property *(De West Realty Corp. v Internal Revenue Serv. of U. S.,* 418 F Supp 1274, 1279). However, it is not contended on this appeal that the cancellation of a valid $150,000 antecedent debt in ex-change for property which brought only $60,000, did not constitute a fair equivalent of valuable consideration. The proof in this case establishes that there was an exchange of equivalent value; but in addition thereto, the law requires that the transfer must be made in "good faith".

The wording of section 272 of the Debtor and Creditor Law,

which contains the phrase "good faith", is identical to that of section 3 of the Uniform Fraudulent Conveyance Act. Because business throughout this country largely disregards State lines, the purpose of a uniform law on the subject of fraudulent conveyances was to enable lenders to know with certainty that they could rely upon the property of their debtors, though situated in another State (see Commissioners' Prefatory Note, 7A Uniform Laws Ann, Uniform Fraudulent Conveyance Act, p 161). Accordingly, in construing a provision of the Uniform Act we should, whenever possible, respect the decisions of the courts of other jurisdictions where it is in force, with a view to ensuring a harmonious national interpretation.

A major case dealing with the interpretation of the phrase "good faith" as used in the act is *Sparkman & McLean Co. v Derber* (4 Wash App 341), where it was held that a person seeking to set aside a conveyance upon the basis of lack of good faith must prove that one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others. The term "good faith" does not merely mean the opposite of the phrase "actual intent to defraud". That is to say, an absence of fraudulent intent does not mean that the transaction was necessarily entered into in good faith. The lack of good faith imports a failure to deal honestly, fairly and openly.

Measured by these standards, the instant transfer must be deemed void for lack of good faith because it was consummated with the intent to obtain an unconscionable advantage for one, who is an officer, director and major stockholder of the corporation over the rights of other general creditors. Former New York law expressly forbade the granting of a preference to the creditors of an insolvent corporation and it prohibited a corporation which had refused to pay its obligations, when due, from transferring any of its property to an officer, director or stockholder for the payment of an antecedent debt or for any consideration other than full value paid in cash (former Stock Corporation Law, § 15). The purpose of section 15 of the former Stock Corporation Law was explained in the case of *Munzinger v United Press* (52 App Div 338, 342) as follows: "The evil to be obviated by that section was the

giving of a preference by an insolvent corporation to its officers, directors and stockholders who should become aware of the insolvency before that fact could become known to the general public. It was feared that in such a case they would be likely to devote the property of the corporation to the payment of their own debts and thereby leave nothing for the other creditors who did not know of its condition. The transfer of any of its property to any officer, director or stockholder, directly or indirectly, for the payment of any debt or upon any other consideration than the full value of the property, paid in cash, was prohibited, because such a transfer by an insolvent corporation would permit the transferee to receive the property of the corporation for his debt and thereby obtain a preference over the other creditors." (See, also, *Caesar v Bernard,* 156 App Div 724, affd 209 NY 570; *Shaw v Ansaldi Co.,* 178 App Div 589, 598.)

Section 15 of the former Stock Corporation Law was enacted in 1890 and was repealed with the adoption of the present Business Corporation Law, effective September 1, 1963. The substance of section 15 was not incorporated into the new law upon the ground that it had become "superfluous" because the matter was " 'adequately covered' " in the Uniform Fraudulent Conveyance provisions of the Debtor and Creditor Law and in the Bankruptcy Act (see Hornstein, Analysis of Business Corporation Law, McKinney's Cons Laws of NY, Book 6, Business Corporation Law, Appendix 1, p 469). Jeremias contends that because the express statutory prohibition of the former law was repealed, it was perfectly lawful for Mazel Knitting Mills to grant a preference in the payment of a debt owed to him, as one of its stockholders, officers and directors, over the debts owed to other general creditors of the corporation. We disagree.

The courts of many jurisdictions have held that the preferential satisfaction of debts owed by insolvent corporations to their directors, over debts due to other general creditors, is barred by the common law (see 19 Am Jur 2d, Corporations, § 1574). Thus, in *Union Coal Co. v Wooley* (54 Okla 391), it was held that a director of an insolvent corporation is a trustee of the corporate assets for the benefit of its creditors and will not be allowed to prefer his own antecedent unsecured debt to the debts of other general creditors of the corporation who would lose all or part of the amount due them if the preference were allowed to stand. In *Jackman v*

*Newbold* (28 F2d 107, 111) the court held that the standard to be applied in this situation was "merely common sense and common honesty, applied in the interest of fair dealing" and it went on to hold that directors of an insolvent corporation would not be permitted to take advantage of their inside position as managing officers to appropriate its remaining assets to satisfy their own unsecured claims over the debts owed to other general creditors.

Whether it be upon the theory that directors of insolvent corporations are trustees for the benefit of all creditors, or upon the theory that it would be inequitable to allow directors to use inside information and their controlling voice in corporate affairs to benefit themselves over the claims of others, the common law forbids preferences to directors of insolvent corporations as being contrary to principles of fair, honest and open dealing (see Ann. 19 ALR 320; 38 ALR 90; 48 ALR 479; 56 ALR 207; 62 ALR 738). Accordingly, the transfer in this case is void because, although made for a fair consideration, it was not made in good faith.

■ Jeremias argues that in the event we find the transfer invalid, the proceeds of the auction sale should be distributed to the parties based upon the relative proportion that the debt owed to each of them bears to all the corporate debts. The ordinary rule of distribution of the assets of an insolvent corporation is equality among creditors of the same class. Upon insolvency, assets must be equally distributed among creditors without preference or priority. However, whenever judicial preference has been established by superior legal diligence, that preference is always preserved in the distribution of assets by the court. Thus, a creditor who is diligent enough to make a levy by execution or attachment upon an insolvent's property prior to the commencement of insolvency proceedings acquires a lien which is not divested by those subsequent proceedings (28 NY Jur, Insolvency, § 33). The parties concede that the Sheriff levied upon the corporate property. The petitioner in this case "won the race". It is no longer a general creditor but, rather, as a levying judgment creditor, it is entitled to the satisfaction of its judgment from the proceeds of the auction sale presently on deposit.

■ The petitioner has cross-appealed from so much of the judgment as denied it a counsel fee and an award of Sheriff's poundage. Petitioner bases its claim for a counsel fee upon section 276-a of the Debtor and Creditor Law. Special Term

was correct in denying an award of a counsel fee. As stated above, the transfer in question was made without an actual intent to defraud and is invalid only under the constructive fraud provisions of section 273 of the Debtor and Creditor Law. Where the prevailing party fails to prove that the transfer was made with the actual intent to defraud, the provision for an award of counsel fee is inoperative *(Everite Trading Corp. v Wanpress Realty Corp.,* 178 Misc 503, affd 268 App Div 852).

The law provides that where a conveyance is fraudulent as to a creditor, such creditor may, as against any person other than a bona fide purchaser, disregard the conveyance and levy execution upon the property conveyed (Debtor and Creditor Law, § 278, subd 1, par b). Petitioner contends therefore that the issue of execution to the Sheriff and his subsequent levy upon the property were valid, entitling it to an award of the Sheriff's poundage.

Poundage is a fee awarded to the Sheriff in the nature of a percentage commission upon moneys recovered pursuant to a levy or execution of attachment *(Campbell v Cothran,* 56 NY 279; 54 NY Jur, Sheriffs, Constables and Police, § 90). The defendant against whom the execution is levied must respond to the Sheriff for his poundage *(Giminez v Great Atlantic & Pacific Tea Co.,* 242 App Div 485). In this case the Sheriff did not take the property in question into his possession, but apparently levied by serving a copy of the execution upon the judgment debtor. Although a Sheriff's sale was scheduled, it did not take place because prior to the date set therefor the assets were sold at a public auction conducted on behalf of Jeremias. Petitioner then commenced this special proceeding pursuant to CPLR 5225 (subd [b]) to compel the private auctioneer and Jeremias to satisfy its judgment from the auction proceeds. Thus, the Sheriff never conducted an auction and never collected any moneys on account of petitioner's judgment against Mazel Knitting Mills. With certain exceptions, the statute authorizes the Sheriff to receive poundage only on amounts actually collected *(Matter of Pearson,* 72 Misc 2d 995; CPLR 8012, subd [b]). Where no actual collection on the execution is made, the Sheriff is entitled to poundage only where the parties settle, the execution is vacated or set aside, or the person that issued the process interferes with the collection of the money (CPLR 8012, subd [b], par 2; 1972 Opns Atty Gen 207; *Nevada Bank of Commerce v 43rd St. Estates*

*Corp.,* 38 AD2d 227, 230, revd on other grounds 33 NY2d 706). Since the Sheriff failed to actually collect any moneys on this execution and since none of the recognized exceptions apply, he was not entitled to poundage under the statute and petitioner's request therefor was properly denied.

Accordingly, the judgment appealed from should be affirmed, without costs or disbursements.

HOPKINS, J. P., GULOTTA and HAWKINS, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered January 16, 1977, affirmed, without costs or disbursements.