OPINION OF THE COURT
Arthur D. Spatt, J.
This is an action by a former wife, plaintiff Sandra Spear (herein referred to as Sandra), against her former husband, defendant Roy S. Spear (herein referred to as Roy), and defendant Donna Litow (herein referred to as Donna) to cancel and set aside as fraudulent, null and void a judgment executed by Roy in favor of Donna dated March 9, 1977, and recorded in the office of the Nassau County Clerk on March 23, 1977. Plaintiff also seeks attorneys’ fees.
THE FACTS
Sandra and Roy were married on May 24, 1964, had two children and were divorced on December 10, 1971. During their marriage, they purchased a home at 37 Glenwood Road, Plain view, New York, as tenants by the entirety. When they were divorced, their interest in the property was converted, by operation of law, into a tenancy in common. Each then had an undivided one-half interest in the said property. The property *343 has a present value of approximately $50,000, less a mortgage of approximately $10,000, leaving an equity of $40,000, divided equally between Sandra and Roy.
By the terms of a separation agreement, Sandra has exclusive use and occupancy of the home and custody of the children. Roy was to pay the monthly mortgage payments of $330 per month and $75 per week for child support and alimony.
Roy defaulted in his financial obligations under the agreement and this has precipitated three of the four judgments— all filed as liens against Roy’s interest in the property — which are the bone of contention in this case.
The fourth judgment — and the second in point of time — is the one involved in this controversy. On March 9, 1977, Roy confessed judgment to Donna in the sum of $13,500. This judgment was recorded in the Nassau County Clerk’s office on March 23, 1977, and is a lien against the property. This judgment was based on moneys allegedly loaned by Donna to Roy in the total sum of $13,650.
Thus, there are the following four judgments filed against Roy’s interest in the property:
1. December 17, 1976 — judgment in favor of Sandra $ 7,858.59
2. March 23, 1976 — judgment in favor of Donna $13,500.00
3. January 25, 1978 — judgment in favor of Sandra $ 7,710.00
4. June 29, 1978 — judgment in favor of Sandra $ 3,559.16
Judgment No. 2 in favor of Donna is here under attack. Its importance is readily apparent since Roy’s only asset is his equity in this property in the amount of approximately $20,-000. If Donna’s judgment is valid, Sandra’s last two judgments would be uncollectable from such equity.
CONTENTIONS
Sandra contends that the confession of judgment by Donna to Roy was fraudulent, null and void on two grounds.
1. Constructive fraud by virtue of section 273 of the Debtor and Creditor Law, in that Roy was insolvent at the time of the confession (conveyance) and it was "without fair consideration”.
2. Actual fraud pursuant to section 276 of the Debtor and Creditor Law, in that there was actual intent to "hinder, delay or defraud”.
Roy and Donna deny any fraud. Roy contends that Donna *344 lent $13,650 to Roy prior to the confession of judgment and that he had every right to protect her by giving her a judgment against his only asset, his interest in the property. They contend the judgment (conveyance) was given when Roy was not insolvent in that he still had his interest in the property; was made with fair consideration and without intent to defraud.
THE TESTIMONY
Sandra testified primarily as to the uncontested facts of the marriage, divorce, failure to support and the judgments in her favor. She stated that arrears continued up to the present time, to a total of $24,015.75.
Attorney Eugene Schaffer who drew the confession of judgment testified that he also represented Roy in a December, 1976 action by Sandra for arrears. He knew of the judgment in favor of Sandra and the arrears due to her when he prepared the confession of judgment. He testified that the purpose of the confession of judgment was to protect Donna.
The examination before trial of Donna was read in the plaintiff’s case. She had a close relationship with Roy and contemplated marriage to him in 1976. Donna testified by deposition that she loaned $9,600 to Frameco Enterprises Inc., a corporation in which Roy and one Murray Geisler were stockbrokers. She further testified at such examination that she knew Roy was "broke”, "bankrupt” and that he had no money. She testified that she knew, when she received the confession of judgment from Roy, that he was "bankrupt”. Roy told her, at that time, that he was "bankrupt”, and so did Attorney Schaffer.
Roy’s examination was also read in plaintiff’s case. He admitted that he had no assets in early 1977 and was in arrears in payment to Sandra at the time he confessed judgment to Donna. He testified that on March 9, 1977, he did not have enough liquid assets to pay off his personal creditors.
Donna testified that she was dating Roy, discussed marriage with him, and lent him money at various times, in the total sum of $13,650. These loans were substantiated by documentary evidence including bank withdrawal slips and copies of teller’s checks.
Included was a loan of $9,600 to Roy for the purpose of his going into business (Frameco Inc.). Donna insisted on the *345 stand that she loaned Roy the money, not Frameco. She vehemently denied lending any money to Frameco Inc. or Murray Geisler, whom she barely knew. The court is satisfied that, in fact, all the moneys loaned by Donna were to Roy, including the $9,600 which Roy then invested in Frameco Inc.
Donna knew about the prior judgment in favor of Sandra. She also knew about the arrears due. Roy and Attorney Schaffer said that the only possible collateral for her loan was a lien against his interest in the house.
Roy testified that he personally borrowed money from Donna which he put into the business. He stated that things turned bad with the business and he saw no way to repay the personal loan to Donna, and so he signed a confession of judgment to protect her. Both he and Donna were uncertain about whether there was to be interest on the loans from Donna, and they were both equivocal as to whether there was any time limitation to repay the loans. He testified that he was insolvent at the time that he executed the confession of judgment to Donna and had no other assets other than his current commissions and the balance of the equity of his interest in the house.
THE LAW
This case evolves around the provisions of the Debtor and Creditor Law of the State of New York. A number of definitive rules herein can easily be established as they are defined in the Debtor and Creditor Law.
A confession of judgment is the "creation of any lien or incumbrance”; and is, therefore, a conveyance, under section 270 of the Debtor and Creditor Law.
Also, Sandra, as the former wife of Roy, is a "creditor” within the meaning of section 270 which reads, in part, as follows:
" 'Creditor’ is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.
" 'Debt’ includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.”
She had a prior judgment to the one under attack herein and, as such, was a creditor. In addition, Roy owed her arrears at the time of his confession of judgment to Donna. (See *346 Soldano v Soldano, 66 AD2d 839; Enthoven v Enthoven, 167 Misc 686, affd 256 App Div 813.) As a former wife, Sandra may avail herself of the Debtor and Creditor Law even though her claim has not matured. (Leitman v Leitman, 21 Misc 2d 653, 656, affd 9 AD2d 682, mot for lv to app den 9 AD2d 783.)
A conveyance may be declared a "fraudulent conveyance” under the Debtor and Creditor Law by a showing of either actual fraud (§ 276) or constructive fraud (§§ 273, 275).
AS TO ACTUAL FRAUD
Section 276 of the Debtor and Creditor Law provides as follows: "§ 276. Conveyance made with intent to defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.”
A clear definition of the "actual intent”, as distinguished from "intent presumed in law”, is set forth in the recent case of Southern Inds. v Jeremias (66 AD2d 178) wherein all assets of an insolvent corporation were transferred to a director thereof in return for satisfaction of a valid antecedent debt. In a well-reasoned opinion by Mr. Justice Damiani, he demonstrated the type of actual intent to defraud as contemplated by this section, as follows: "In this connection the actual intent to defraud consists of deception intentionally practiced to frustrate the legal rights of another (see 37 CJS, Fraud, § 2, subd b). A prime example of this type of fraud is where a debtor transfers his property to another while retaining the use thereof so as to continue in business free from the claims of creditors.” (Southern Inds. v Jeremias, supra, p 181.)
In this case, there was no proof of actual intent to defraud Sandra. Therefore, the plaintiff cannot prevail under section 276.
AS TO CONSTRUCTIVE FRAUD
Section 273 of the Debtor and Creditor Law governs in this regard and reads as follows: "§ 273. Conveyances by insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.”
*347 The court finds as a matter of fact, based on the proof herein, that Roy was or would be rendered insolvent by the confession of judgment made to Donna on March 9, 1977.
Therefore, the crucial question to be decided by the court is whether the conveyance was made "without a fair consideration”. Even if Roy was insolvent, if the confession of judgment was made to Donna with fair consideration, plaintiff cannot recover. However, if the confession of judgment was made without fair consideration, the confession would be fraudulent as to Sandra and must be set aside.
What is the "fair consideration” referred to in section 273? In order to define that term, we must turn to section 272 of the Debtor and Creditor Law which defines fair consideration and reads as follows:
"§ 272. Fair consideration.
"Fair consideration is given for property, or obligation,
"a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
"b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.”
The court finds that the moneys loaned to Roy by Donna would be a "fair equivalent” for the judgment and would be an "antecedent debt in amount not disproportionately small” to the judgment. The loans were from Donna to Roy, not to Frameco, and so this court decides, as a matter of law and fact. The court is troubled, however, by the section 272 words, repeated in each subdivision, requiring "good faith”. The case then comes down to the meaning — within these provisions of the Debtor and Creditor Law — of the words "good faith”. Stated simply, Roy and Donna must have acted with good faith in the giving and receiving of this confession of judgment.
As noted by Mr. Justice Hopkins in Julien J. Studley, Inc. v Lefrak (66 AD2d 208, 213): "Here, again, we note that the good faith of both transferor and transferee is stressed as an indispensable condition in the definition of fair consideration under either branch of the statutory language.”
For a clinical explanation of the term "good faith” and its application to the Debtor and Creditor Law (art 10, Fraudu *348 lent Conveyances, § 272), we again turn to Southern Inds. v Jeremias (66 AD2d 178, supra), which involves a conveyance of property in cancellation of a valid antecedent debt, which debt was actually in excess of the value of the property conveyed. In other words, there was an exchange of equivalent value; there was "fair consideration”. However, the law required that the transfer must be made in "good faith”.
Since the wording of section 272 of the Debtor and Creditor Law, which contains the phrase "good faith”, is identical to that of section 3 of the Uniform Fraudulent Conveyance Act, the perusal of a case under that act would be in order. In Sparkman & McLean Co. v Derber (4 Wash App 341) it was held that a person seeking to set aside a conveyance upon the basis of lack of "good faith” must prove that one or more of the following factors is lacking: (1) An honest belief in the propriety of the activities in question; (2) No intent to take unconscionable advantage of others; and (3) No intent of, or knowledge of the fact, that the activities in question will hinder, delay or defraud others.
As stated by Mr. Justice Damiani: "The term 'good faith’ does not merely mean the opposite of the phrase 'actual intent to defraud’. This is to say, an absence of fraudulent intent does not mean that the transaction was necessarily entered into in good faith. The lack of good faith imports a failure to deal honestly, fairly and openly. ” (Southern Inds. v Jeremias, supra, p 183; emphasis supplied.)
Measured by the standards and factors above set forth, this judgment of March 9, 1977 must be deemed void for lack of good faith because it was consummated with the intent to, or knowledge of the fact that, said judgment would hinder and delay Sandra, a bona fide creditor, with regard to the arrears due her by Roy which were not yet protected by a judgment. It is clear that Roy and Donna did not act in good faith to this known creditor. They did not act in good faith to his children and their mother who were owed a duty of support by Roy, which he had ignored, to the knowledge of Donna. Instead, they jointly acted to quickly create this judgment which, although based on fair consideration, was deliberately executed to protect Donna and, therefore, hurt Sandra. They knew, when they arranged this judgment, that it would not only hinder and delay Sandra but, in effect, would wipe out the arrears due her which were not yet protected by a judgment. Roy’s equity in the building would be extinguished by *349 Donna’s judgment, leaving Sandra permanently hindered and irrevocably delayed. This was a lack of good faith. This was a failure to deal honestly, fairly and openly with the mother of his children, all of whom he neglected to support.
Plaintiff also contends that the obligation to pay alimony and child support is superior and preferred over judgments of other creditors. Some credence to this theory may be found in Zimler v Silver (61 AD2d 981). In view of the court’s ruling that the indispensable factor of "good faith” was lacking in the inception of the judgment to Donna, it is not necessary for the court to go further.
Finally, plaintiff requests counsel fees pursuant to section 276-a of the Debtor and Creditor Law. The express language in said statute provides for counsel fees only: "where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law”.
In this case, this court has found, as a matter of fact and law, that there was no proof of actual intent to defraud. Where the prevailing party fails to prove that the transfer was made with the actual intent to defraud, the provision of an award for counsel fees is inoperative. (Southern Inds. v Jeremias; supra; Everite Trading Corp. v Wanpress Realty Corp., 178 Misc 503, affd 268 App Div 852.)
Accordingly, plaintiff is granted judgment as follows:
(1) That the judgment by confession executed by defendant Roy S. Spear in favor of the defendant Donna Litow, now known as Donna Ditchik, dated March 9, 1977, and recorded on March 23, 1977, in the office of the Nassau County Clerk in liber 783 of judgments at page 50 be adjudged void.
(2) That the County Clerk of Nassau County be directed to cancel and set aside the said judgment.