**COMPUTERLAND CORPORATION, Plaintiff,**

v.

**BATAC, INC., Business and Technical Computing, Inc., Jerry M. Lieberman and Lorraine Lieberman, and Advanced Business Computers, Inc., Defendants.**

**No. 88 Civ. 8624 (SWK).**

United States District Court, S.D. New York.

Feb. 8, 1990.

Nourse & Bowles by John E. Bradley, New York City, for plaintiff.

Goldman & Goldman by Mark Goldman, Great Neck, N.Y., for defendant, Advanced Business Computers, Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff has obtained an *ex parte* order of attachment against defendant Advanced Business Computers ("ABC") subject to N.Y. C.P.L.R. § 6201(3) (McKinney's 1988), and has moved for confirmation under N.Y. C.P.L.R. § 6211(b) (McKinney's 1988). This Court previously confirmed orders of attachment against the other defendants in this case, but reserved judgment regarding ABC until a hearing could be held. A hearing having been conducted, this Court now orders that the attachment of ABC's assets be confirmed.

### BACKGROUND

The facts and legal standards relevant to this motion have been fully developed in this Court's Memorandum Opinion and Order, dated March 22, 1989 (hereinafter "Mem.Op."), familiarity with which is presumed. They will be repeated here only to the extent necessary. On November 26, 1988, an official from plaintiff ComputerLand Corporation (hereinafter "ComputerLand Corp.") contacted its franchisee, defendant Lieberman, and informed him that in light of certain problems which were then emerging he wished to make a store visit as provided in the franchise agreement. Lieberman refused to allow him access, and on November 30, 1988 ComputerLand delivered notices of default under the agreement. Plaintiff terminated the franchise on December 1, 1988 and, pursuant to the franchise agreement, directed Lieberman "to immediately close the Computer-

Land store premises and remain closed to business." On December 6, 1988, this Court granted plaintiff's request for a TRO prohibiting then-named defendants from transferring or selling equipment or inventory except in the ordinary course of business. Nonetheless, subsequent to the issuance of the TRO, Lieberman liquidated his inventory by making two large sales of equipment to defendant ABC, totalling $85,000. On December 17, 1988, the day after this Court granted ComputerLand's requested preliminary injunction, a ComputerLand representative entered the store and found the premises to be empty.

## DISCUSSION

This Court has already determined that the $85,000 liquidation sales by Lieberman were fraudulent conveyances under § 276 of New York Debtor Creditor Law, because Lieberman "actually intended" to defraud plaintiff, a present creditor. Because the Court has decided that the conveyance to ABC was fraudulent, it must now determine whether ABC was a *bona fide* purchaser for value, as provided in § 278. Mem.Op. at 16; *Federal Deposit Ins. Co. v. Malin*, 802 F.2d 12, 18 (2d Cir.1986). Section 278 defines a *bona fide* purchaser as one who both has paid "fair consideration" and also is "without knowledge of the fraud at the time of the purchase." If either of these characteristics is lacking, then the fraudulent conveyance may be set aside. § 278. In the present case, since the computer equipment has been resold by ABC, that would mean placing a freeze on the bank account into which proceeds of the equipment sale was deposited.

In New York, "fair consideration" is defined in the Debtor and Creditor Law as an exchange of equivalent value coupled with "good faith" on the part of both the purchaser and the seller. § 272; *see also, Clarkson Co. v. Shaheen*, 533 F.Supp. 905, 931 (S.D.N.Y.1982) (good faith an "indispensable component" of fair consideration); *In re Ahead by a Length*, 100 B.R. 157, 169 (Bkrtcy.S.D.N.Y.1989) (concept of fair con-

sideration under § 272 embraces value and good faith; good faith is required of both the transferor and the transferee and demands honest, open and fair dealing). Under New York law, a transaction is void for lack of "good faith" when

one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others. The term 'good faith' does not merely mean the opposite of the phrase 'actual intent to defraud.'

*Southern Industries v. Jeremias*, 411 N.Y. S.2d 945, 949, 66 A.D.2d 178, 182 (2d Dep't 1978). Thus, this Court must determine whether ABC's post-TRO purchases of equipment from Lieberman were in good faith, or instead, whether any of these three indicia of good faith were lacking.

Plaintiff claims that ABC's lack of good faith is inferable from the close nexus between ABC and Lieberman's ComputerLand operation. This Court agrees that there is a suspicious amount of contact between the two businesses. The Court previously found that ABC had a special business relationship with Lieberman and BTC, a much closer relationship than that claimed by ABC. Evidence adduced at hearing has further illuminated the character of the two entities' interactions, and points to the presence of several of the *Southern Industries* indicia of lack of good faith.

Defendant ABC is a New York corporation formed on March 23, 1988. Jack Kramer testified that he is the sole shareholder of ABC as well as its only officer and director. Hearing Tr., at 56; Kramer Dep. Tr., at 47–50. Most or all of ABC's business consisted of "gray marketing" ComputerLand products, i.e., purchasing products from licensed dealers for resale.[1] Indeed, ABC made over 90% of its product purchases from Lieberman alone. Hearing Tr., at 66; Pl.Exh. 59, 59A–59I; Pl.Exh. 58,

---

**1.** This practice deprives plaintiff of royalties based upon retail sales to end-users. Affidavit

of Michael J. Cevene, dated February 2, 1989, at ¶¶ 3, 4, 7.

58A–58G. ComputerLand's franchise agreement with Lieberman and its other franchisees expressly prohibits gray market activity, and Kramer was aware of this prohibition.[2] Hearing Tr., at 69–70, 119–121.

ABC's office was located in the basement of Lieberman's store, ComputerLand Madison Square (CMS), at 20 West 23rd Street, New York, New York. Lieberman provided ABC with some office furniture, Hearing Tr., at 107, and access to an auxiliary phone line which was billed to CMS. Hearing Tr., at 83. Some of ABC's business was conducted from CMS's telephone upstairs, and Kramer and his off-the-books employee Jyotika Patel sometimes made personal calls from the upstairs line. Appendix B of Plaintiff's Post–Hearing Memorandum of Law. Evidence was introduced of a phone call to Lieberman's bank that was made from ABC's line. *Id.* ABC had no business cards or letterhead of its own. Hearing Tr., at 65. On at least one occasion, Kramer used a CMS business card to transact business with a customer, Orin Knopp. Hearing Tr., at 8, 12. Mr. Knopp also testified that he recalled Kramer using CMS' credit card imprinter to record a sale. Hearing Tr., at 10–11.

Kramer had substantial access to ComputerLand Corp.'s confidential pricing and product availability information through Lieberman's secretary. He purchased for resale well over one million dollars worth of computer equipment from Lieberman alone. Hearing Tr., at 66, 106. He never took out insurance on the products he purchased. Hearing Tr., at 76, and reportedly provided no warranties or technical support for the products he sold. Plaintiff's Post–Hearing Mem. at 6; Defendant's Post–Hearing Mem. at 7. He was also paid commissions by Lieberman, at first by checks which totalled $15,562, and later through 2–3% reductions in sales price. Hearing Tr., at 77, 80; Kramer Dep. Tr., at

68–74. Kramer claimed that he subleased office space from CMS for $400 per month. However, there are no rent receipts or cancelled checks. Kramer explained at hearing that the rent was simply offset with product purchases from CMS; even so, ABC reported no tax deductions for business rental or phone bill expenditures relating to the 23rd Street store. Instead, the business deductions claimed on Kramer's tax returns apparently derived from personal living expenses. Hearing Tr., at 99–105; Kramer Dep. Tr., at 91–105.

All of these factors point to a suspiciously close relationship between ABC and CMS. Even in the context of this unusual business relationship, several aspects of their dealings late in 1988 stand out. At first, Kramer got invoices from Lieberman for purchases,[3] but after September 1988 these invoices ceased. ABC and Lieberman transacted $606,325 worth of uninvoiced business during October–December 1988 (Pl.Exh. 55F, 55G, 55H, 55I, 43).[4] As for the two post-TRO product sales, the ones this Court is specifically interested in, Kramer paid the $85,000 by certified checks, made out to Lieberman in his individual capacity. Kramer maintains that he provided the checks in that form at Lieberman's request. Kramer Dep. Tr., at 231. This was not their usual practice, and should have aroused Kramer's suspicions.

Moreover, Sharon Burke, a former CMS employee, credibly testified that Kramer actually knew prior to December 8, 1988 that Lieberman was closing down the store. Hearing Tr., at 30–31. This account is contradicted by Kramer and his employee, Ms. Patel, who claim that Kramer did not know until mid-December of Lieberman's plans to close the store. However, the Court finds that Mr. Kramer and Ms. Patel are less credible witnesses than Ms. Burke, who would have no motivation to fabricate this information. Kramer obviously has an

---

**2.** Kramer previously had been employed as a salesman at two other ComputerLand franchises.

**3.** The invoices contained discrepancies, Kramer Dep Tr., at 262–263, and, after June 1988, do not

correlate with checks drawn by ABC. *Id.* at 255–56.

**4.** This figure includes the two post-TRO sales of Lieberman's inventory to Kramer, totalling $85,-000.

interest in the disposition of this issue. Ms. Patel's testimony was fraught with contradictions, and was also tainted by interest and bias. There was some suggestion that Kramer has not yet paid her for her last pay period. Hearing Tr., at 132. Therefore, the Court credits the testimony of Sharon Burke and not the conflicting testimony of Mr. Kramer and Ms. Patel. The Court concludes that Mr. Kramer had information prior to December 8th that Lieberman planned to close down CMS.

The lack of invoices, the request for Kramer to make out certified checks to Lieberman personally, and the reports of the imminent demise of Lieberman's store are enough to cast a long shadow upon Kramer's claims of "good faith." The Court finds that this combination of circumstances and events shows both a knowledge by Kramer of the potentially damaging effect of the post-TRO transactions upon ComputerLand Corp.'s legitimate business interests, and the strong improbability of Kramer's honest belief in the propriety of these transactions. This Court must conclude that ABC's purchases of Lieberman's liquidated inventory after Lieberman's franchise agreement was terminated were not made in good faith pursuant to § 272 and *Southern Industries.*

Because the post-TRO transactions were not made in good faith, ABC cannot qualify as a purchaser for "fair consideration," and thus is not a *bona fide* purchaser for value for purposes of New York's Fraudulent Conveyances Act. As this Court has previously held, establishing that ABC was not a good faith purchaser for value means that the fraudulent conveyance may be avoided. Mem.Op., at 18. It follows that ABC's assets are subject to attachment under § 278. In addition, the proof of fraud to satisfy § 278 also satisfies the comparable fraud requirement for CPLR § 6201(3). *Id.* at 19. Therefore, the conveyances shall be set aside, and the freeze on ABC's bank account, which includes the proceeds from the resale of the equipment fraudulently purchased from Lieberman, accordingly is confirmed.

## CONCLUSION

For the forgoing reasons, the Court grants plaintiff's motion to confirm the order of attachment against defendant ABC, and correspondingly denies ABC's cross-motion to vacate.

SO ORDERED.