**In re O.P.M. LEASING SERVICES, INC., Debtor.**

**James P. HASSETT, as Trustee of O.P.M. Leasing Services, Inc., Plaintiff,**

v.

**Herbert WEISSMAN and Fundways, Ltd., Defendants.**

**Bankruptcy No. 81 B 10533. Adv. No. 83–5241A.**

United States Bankruptcy Court, S.D. New York.

Dec. 9, 1983.

Zalkin, Rodin & Goodman, New York City, for trustee; Larry Henin, Richard Toder, New York City, of counsel.

Jeffrey D. Buss, New York City, of counsel, for Herbert Weissman and Fundways.

BURTON R. LIFLAND, Bankruptcy Judge.

O.P.M. Leasing Services, Inc. ("OPM") was and is engaged in the business of buying, selling and leasing new and used computers and related equipment. On March 11, 1981 OPM filed a voluntary petition in this Court under Chapter 11 of the Bankruptcy Code ("the Code"). On March 27, 1981, James P. Hassett was appointed reorganization trustee ("the Trustee") of OPM.

In the instant proceeding the Trustee seeks to exercise his broad avoiding powers to gather back into the estate those funds that were allegedly fraudulently conveyed to defendants. The Code recognizes that such transactions represent a constructive fraud on the debtor's innocent creditors and may unfairly deplete the debtor's estate if equally valued consideration is not exchanged for the obligation incurred. *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 989 (2d Cir.1981). Accordingly, the Trustee is afforded these broad avoiding powers in order to set aside such transfers and to recover property for the benefit of the innocent creditors.

I. *Motions Before This Court*

This Court must address motions pertaining to both the contested adversary proceeding between the Trustee and defendants and defendant's motion to allow their late filing of a proof of claim. There is a four-pronged motion brought by defendants with respect to the adversary proceeding: 1) a motion to dismiss the Trustee's complaint for lack of jurisdiction pursuant to Bankruptcy Rule 9015 [1] and Federal Rules of Civil Procedure 12(b)(1) ("Federal Rule") and Emergency Bankruptcy Rule I(d)(1)(D); 2) a motion to dismiss the complaint for failure to allege fraud with particularity as required by Bankruptcy Rule 7009 and Federal Rule 9(b); 3) a motion to dismiss with reference to Code Section 548(a), for failure to plead or allege which, if any, transactions may have transpired within one year of the date that OPM filed its original petition for bankruptcy (the "filing date"); and 4) a motion to lift the stay prohibiting actions against the debtor so that the parties can proceed with the contested proceeding in the United States District Court for the Southern District of New York.

II. *Background Regarding the Adversary Proceeding*

In the complaint before this Court filed on March 3, 1983, the Trustee asserts claims against defendants Herbert Weissman

---

1. The New Rules of Bankruptcy Procedure became effective as of August 1, 1983. All references by this Court to the Bankruptcy Rules will be pursuant to the new Rules.

("Weissman") and Fundways Ltd. ("Fundways") with respect to fraudulent transfers alleged to have been received by defendants from OPM pursuant to Code Sections 544, 548, and 550 and New York Debtor-Creditor Law Sections 270 *et seq.* The Trustee alleges that between in or about December 1975 and February 1981, OPM made fraudulent payments totalling $332,000 to defendant Weissman and $266,562.45 to defendant Fundways. The Trustee's complaint demands judgment against Weissman for $599,062.45 and Fundways for $266,562.45.

The complaint asserts six causes of action against defendant Weissman and five causes of action against defendant Fundways. The claims against both defendants include allegations: (1) that the transfer of funds to defendants was made without fair consideration and without receipt by OPM of a reasonably equivalent value in exchange; (2) that OPM at the time of the transfer was (a) insolvent; (b) had an unreasonably small capital; or (c) intended or believed that it would incur debts beyond its ability to pay as they matured; (3) that these transfers were made with actual intent by OPM to defraud its creditors; (4) that these funds were not taken in good faith by the defendants; (5) that defendants knew of the voidability of the transfer of funds; and (6) that defendants took benefits without giving any value to OPM. In addition, defendant Weissman is alleged to have been: (i) the initial transferee of the transfers or the entity for whose benefit the transfers made to Fundways were made; or (ii) an immediate or mediate transferee of the transfers made to Fundways.

Soon after filing the instant complaint, the Trustee commenced an identical action against the defendants in the District Court for the Southern District of New York. The Trustee chose this avenue in an effort to protect himself because of the uncertainty of the Bankruptcy Court's jurisdiction at that time. On June 9, 1983, Judge Goettel, U.S.D.J. chose not to rule immediately and ordered that the action before him be transferred to the suspense docket of the court subject to reinstatement.

On June 3, 1983 defendants filed their answer to the complaint, alleging that all payments received from OPM were taken in good faith and in exchange for reasonable value or fair consideration. The answer also contains nine affirmative defenses and two counterclaims. The eighth and ninth affirmative defenses and the two counterclaims allege that OPM is liable to the defendants pursuant to certain business arrangements entered into between OPM and the defendants several years prior to the filing date.

The eighth affirmative defense and first counterclaim allege that Herbert Weissman was instrumental in bringing Rockwell International Corporation ("Rockwell") to OPM as a client. Thus, Weissman alleges that he is entitled to receive a commission payable in installments equal to one percent of the initial fair market value of all equipment leased by Rockwell from OPM or $1,000,000, whichever is greater. Defendants demand an accounting by OPM to determine the actual value of the nonfraudulent equipment lease agreements entered into by Rockwell and OPM and a judgment that the defendants are entitled to receive the commissions for which they contracted.

The ninth affirmative defense and the second counterclaim allege that defendants were instrumental in introducing an insurance policy contract scheme to OPM. It alleges that in return for the introduction and the exclusive right to use the policy, OPM agreed to pay defendants either $100,000 or one-half percent of the initial cost of the equipment insured by OPM, whichever is greater. Accordingly, defendants demand an accounting and judgment declaring their right to receive either $100,000 or the one-half percent from OPM.

On June 3, 1983, defendants moved this Court for an order dismissing the complaint based on the grounds detailed above. The Trustee then cross-moved for an order dismissing the defendants' two counterclaims for failure to state a claim upon which relief may be granted and to strike the eighth and ninth affirmative defenses on

the ground that they improperly attempt to have OPM's alleged prepetition unsecured indebtedness to defendants set off against the fraudulent transfers sought to be recovered by the Trustee.

On July 13, 1983 defendants filed a motion for an order permitting a late filing of their proof of claim pursuant to Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9006(b).

III. *Discussion of Law*

A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Preliminarily, this Court will address the motion to dismiss the complaint for lack of jurisdiction pursuant to Bankruptcy Rule 9015 and Federal Rule 12(b)(1)[2] and the Emergency Rule[3]. Defendants claim that *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 454 U.S. 1029, 102 S.Ct. 564, 70 L.Ed.2d 472 (1982) controls the instant case, thereby depriving this Court of jurisdiction over the matter, and, in addition, they claim that defendants are entitled to a trial by jury.

The issues in the present proceeding are wholly dissimilar to those discussed in *Marathon; Marathon* in no way concerned a trustee's avoiding powers, which powers are a core bankruptcy matter clearly arising under, not "related to" the Code. *See* Emergency Rule § (d)(3)(A), 28 U.S.C. § 1471(c)[4] (explaining the Emergency Rule and declaring avoiding powers of trustee as not "related matter"). Moreover, although defendants demand a jury trial before the District Court, they are not automatically entitled to one.

Defendants have failed to file a demand for a jury trial in connection with the instant adversary proceeding. Defendants argue that since the Emergency Rule specifically precludes a bankruptcy court from conducting a jury trial, there is no purpose in making a demand in this Court. A request has been filed with the District Court because such application in this Court, in defendants' estimation, would be futile. Defendants are in error.

Defendants correctly assert that the Emergency Rule for the Southern District of New York prohibits this Court from con-

---

**2.** Federal Rule of Civil Procedure 12(b) provides in pertinent part:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

(1) lack of jurisdiction over the subject matter...

**3.** The Emergency Bankruptcy Rule is a response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 454 U.S. 1029, 102 S.Ct. 564, 70 L.Ed.2d 472 (1982). In that decision, the Court declared 28 U.S.C. § 1471(c) unconstitutional because it attempted to confer on Article I bankruptcy judges the authority to determine related proceedings which could otherwise only be determined by an Article III judge. A related proceeding is a suit brought by the trustee against a party who has not filed a claim or otherwise appeared in the proceedings. The Court held that this aspect of the Code was an unseverable fallacy, and invalidated the entire grant of jurisdiction to the bankruptcy judges.

The Southern District of New York has adopted Emergency Bankruptcy Rule I as a

means of addressing the problems addressed by *Marathon.* Similar rules have been adopted by every district in the nation.

Under this Rule, the District Court has referred all Title 11 proceedings to bankruptcy judges. Core bankruptcy matters are extensively illustrated in paragraph (d)(3)(A) of the Emergency Rule. In related proceedings, as exemplified by *Marathon,* a bankruptcy judge cannot enter final judgments or final orders. *See* paragraph (d)(3)(B). With respect to core bankruptcy matters, a bankruptcy judge is permitted to enter orders and judgments, which are then subject to the appellate review of the District Court.

The Second Circuit, as well as four other circuit courts of appeal and eight district courts have upheld the constitutionality of the Emergency Rule. *Salomon v. Kaiser,* 722 F.2d 1574 (2d Cir.1983); *Coastal Steel Corp. v. Tilgham Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir.1983); *First National Bank of Tekamah v. Hansen,* 702 F.2d 728 (8th Cir.1983); *Matter of Braniff Airways, Inc.,* 700 F.2d 214 (5th Cir.1983); *aff'g In re Braniff Airways, Inc.,* 27 B.R. 231 (Bkrtcy.N. D.Tex.). *See, e.g., Matter of United Grocers Corp.,* 30 B.R. 46 (D.N.J.1983).

**4.** See note 3, *supra.*

ducting jury trials. However, the newly promulgated Bankruptcy Rules, which went into effect on August 1, 1983, do provide for jury trials pursuant to Rule 9015. It is significant that these Rules were put into effect post-*Marathon* and in cognizance of the Emergency Rule. Indeed, the Second Circuit in upholding the validity of the Emergency Rule has articulated that the Bankruptcy Rules were promulgated with full awareness of *Marathon* and the Emergency Rule, stating:

> [The Bankruptcy Rules] became effective on August 1, 1983.... These bankruptcy rules can be presumed to be constitutional. *See Hanna v. Plumer,* 380 U.S. 460 [85 S.Ct. 1136, 14 L.Ed.2d 8] (1965) (Federal Rules of Civil Procedure).... [I]t is unlikely that the Supreme Court would promulgate procedural bankruptcy rules for the bankruptcy courts and the district courts in 1983 if its 1982 decision in *Marathon* invalidated the jurisdiction of both the bankruptcy courts and the district courts.

*Salomon v. Kaiser,* 722 F.2d 1574 at 1579 (2d Cir.1983).

Nevertheless, a conflict between the Emergency Rule and the Bankruptcy Rules is evident. The Third Circuit recently addressed which rule is determinative in the event of a conflict between the Emergency Rule and the Bankruptcy Rules. That court held that in questions of procedure the new Bankruptcy Rules prevail:

> ... [S]ubsequent to August 1, 1983 any local rule governing *procedure,* as distinguished from *jurisdiction,* in bankruptcy cases must yield to the bankruptcy rules duly promulgated under the Supreme Court's statutory authority. 28 U.S.C. § 2075. Therefore, to the extent that the model rule and the new bankruptcy rules provide for differing standards of appellate review, the latter must prevail.

*In re Morrissey,* 717 F.2d 100, 3 Bankruptcy Law Reporter ¶ 69,375 (CCH) (3d Cir. Sept. 19, 1983).

■ Pursuant to this holding, Bankruptcy Rule 9015 is viable and enforceable, and defendants could have made a jury demand to this Court. A jury demand, if timely made and appropriate to the cause of action, serves only to establish a procedural rerouting from the Bankruptcy Court to the District Court. The fact that a demand was made in the District Court action is of no consequence because the proceedings in this Court are separate and distinct.

■ The Trustee argues that since no jury demand was made in this Court, defendants have waived their right to a jury trial. According to Section 9015, it appears that defendants have in fact waived their right if indeed they had one. The subsection on waiver reads in pertinent part: "The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5005 constitutes a waiver of trial by jury...." Bankruptcy Rule 9015(c). The rule requires that such a demand be made "in writing not later than ten days after service of the last pleading directed to such issue." Bankruptcy Rule 9015(b)(1). It is clear that the appropriate time has passed and defendants would be precluded from asserting that right now.

■ Turning to the substantive merits of defendants' argument for a jury trial, the relief requested by the Trustee—the setting aside of a fraudulent conveyance—is equitable in nature. *See In re Checkmate Stereo & Electronics, Ltd.,* 21 B.R. 402, 408 (D.C.E.D.N.Y.1982); *Hyde Properties v. McCoy,* 507 F.2d 301, 305 (6th Cir. 1974). As such, the Seventh Amendment does not require jury trials for these claims. *See e.g., In re Newman,* 14 B.R. 1014, 8 B.C.D. 328, 329 (Bkrtcy.S.D.N.Y.1981). Fraudulent conveyance actions under the Code, likewise, have not provided for jury trials. *Id.* 14 B.R. at 1015, 8 B.C.D. at 329; *See In re Hause,* 10 B.R. 628, 629 (Bkrtcy.D. Mass.1981), *aff'd,* 694 F.2d 861 (1st Cir. 1982); *In re Mozer,* 10 B.R. 1002, 1004 (Bkrtcy.D.Colo.1981); *In re Fleming,* 8 B.R. 746, 750 (Bkrtcy.N.D.Ga.1980). The Supreme Court has also recognized that in bankruptcy proceedings the right to jury trial need not apply. *See Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966).

As in *Fleming,* the Trustee in the instant case "seeks to recover not damages but assets which he alleges are wrongfully withheld from the estate. The money judgment is an integral part of the equitable relief he seeks." *In re Fleming,* 8 B.R. 746, 750. While the Trustee seeks monetary relief, not every award of monetary relief is necessarily "legal" in nature. *See Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). One court has held that "monetary relief may flow from an equitable claim without acquiring a legal character." *Towers v. Titus,* 5 B.R. 786, 794–95 (N.D.Cal.1979).

On the basis of the foregoing case law authority, this Court will deny defendants' motion for lack of subject matter jurisdiction on the merits because although a jury trial could have been demanded under the Bankruptcy Rules, it was not so demanded. Moreover, such jury trial is not required in the instant case.

■ In addition, the motion to lift the stay must be summarily dismissed. The stay only applies to actions against the debtor. It does not apply to the Trustee's advancement of his own adversary proceeding here or in the District Court.

B. *Motion to Dismiss Pursuant to Rule 9(b)*

■ Defendants have also moved to dismiss the complaint for failure to allege fraud with particularity as required by Federal Rule 9(b) as implemented in bankruptcy matters by Bankruptcy Rule 7009. Federal Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This pleading requirement must be reconciled with Federal Rule 8[5] and its requisite of notice pleading. One court has declared: "So long as the complaint affords defendant notice of the claims against him and evidences a reasonable belief on plaintiff's part that his com-

plaint has merit," both Rule 8 and 9 will be satisfied. *Gilbert v. Bagley,* 492 F.Supp. 714, 726 (M.D.North Carolina, 1980). *See In re Hart,* 461 F.Supp. 328, 330 (E.D.Ark. 1978); *In re King's Place,* 6 B.R. 305, 307–08 (Bkrtcy.E.D.Pa.1980); *In re McGuff,* 3 B.R. 66, 70 (Bkrtcy.S.D.Cal.1980). Furthermore, a complaint will be deemed sufficient if it enables defendants to frame a responsive pleading. *See Felton v. Walston & Co., Inc.,* 508 F.2d 577, 581 (2d Cir.1974); *Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366, 373 (S.D.N.Y.1981); *Paramount Film Distributing Corp. v. Jaffurs,* 11 F.R.D. 437, 439 (W.D.Pa.1951).

Defendants rely upon this Court's previous decision in *OPM v. Zimmerman,* 32 B.R. 199 (Bkrtcy.S.D.N.Y.1983), where the trustee was required to replead his fraud complaint with greater particularity. Defendants insist that it is impossible for them to prepare an adequate defense based upon the allegations contained in the Trustee's complaint, and that they were not provided with adequate notice of the particular circumstances constituting the alleged frauds.

■ In *Zimmerman,* the complaint was deemed inadequate because it was not clear whether defendants could fashion an adequate answer to the allegations. However, the present case can be readily distinguished because defendants have prepared an adequate answer to the complaint complete with affirmative defenses and counterclaims. In their answer in the instant case, defendants not only admit receiving the funds in question but further respond by counterclaiming for monies they claim are owed them. Thus, it appears that issue has been joined and defendants have obtained sufficient information from the complaint to frame a cogent response. Having pleaded and framed issues, it ill behooves the defendants to make the argument that they cannot do that which they demonstrated they were able to do.

---

**5.** Federal Rule 8 provides in pertinent part: (a) A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim shall

contain ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief....

Rule 9(b) requires that the wrongful conduct alleged be identified and the nature of the misrepresentation be stated. *See Gilbert v. Bagley,* 492 F.Supp. 714, 726. The instant complaint fulfills these requirements in that the Trustee alleges fraudulent conveyances between certain years for a total sum certain and that these transactions occurred without the provision of fair consideration. In addition, the liberal discovery rules militate against dismissal of a complaint for failure to plead with particularity once the basic framework of the fraud has been outlined. As the court in *Bagley* stated: "The liberal provisions in the Federal Rules for discovery and other pretrial procedures are particularly well-suited for narrowing the issues in dispute and their availability counsels against dismissal." *Id.; Accord, Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366, 374 (S.D. N.Y.1981). The Trustee will thus be required to specify his allegations during pretrial discovery in order to satisfy his ultimate burden at trial to come forward with greater particulars to support his claims.

Defendants argue that the complaint is overly comprehensive in scope because it fails to specify over one hundred and fifty transactions that took place over a six year period. However, requiring a list of every alleged transaction among OPM, Weissman and Fundways would represent an undue burden on the Trustee and would be wholly inappropriate. As one court has held: "[I]f only one fraudulent act were relied on, more details as to time and place would be appropriate. However, here such detail would unduly lengthen the complaints in violation of Rule 8(a)." *Paramount Film Distributing Corp. v. Jaffurs,* 11 F.R.D. at 439 (W.D.Pa.1951). The rigors of Rule 9(b) must be tempered by the more liberal requirement of Rule 8 of pleading merely a short and concise statement of the claim. *See Felton v. Walston and Co., Inc.,* 508 F.2d 577, 581 (2d Cir.1974); *OPM v. Zimmerman,* 32 B.R. 199 (Bkrtcy.S.D.N.Y. 1983).

The instant complaint has fulfilled the requirements of pleading fraud in a civil action. That these requirements have been fulfilled is demonstrated by defendants' clearcut ability to answer and counterclaim. Furthermore, the complaint clearly satisfies the more liberal standards applied to fraud pleading in bankruptcy cases.

The less stringent standard for pleading fraud with particularity in a bankruptcy proceeding involving a trustee is predicated upon the fact that it is often the trustee, a third party, who is pleading fraud on second-hand information. *See, e.g., Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974). *See also In re Germain,* 144 F.Supp. 678, 683 (S.D.Cal. 1956); *OPM v. Zimmerman,* 32 B.R. 199 (Bkrtcy.S.D.N.Y.1983).

Moreover, less particularity is required where plaintiff is not asserting that the fraud was committed against himself personally, but rather that it was committed against a third party. *See Allegaert v. Perot,* 78 F.R.D. 427, 430 (S.D.N.Y.1978) (citing *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972)). The rigors of Rule 9(b) are also liberalized where the essential facts are solely within the knowledge of the defendants. *Id.* In the instant case, the Trustee has no personal knowledge of the relevant facts, records, and conversations relating to the transactions between OPM and defendants. Therefore, pursuant to the standards enunciated in *Zimmerman* and the above-detailed cases, the Trustee has surely pleaded with sufficient particularity under the bankruptcy standard and has probably fulfilled the bi-party general civil liability pleading requirements as well.

The Trustee urges another similar basis for permitting a more liberalized pleading in the instant case. He asserts that the high degree of particularity required in a complaint involving active fraud may be totally inappropriate because this action involves merely constructive fraud. Citing *Cadillac v. Cadillac,* 58 F.R.D. 534 (E.D.N.Y. 1973), the Trustee argues that a claim of fraudulent conveyance need not allege the common variety of deceit, misrepresentation or fraud in the inducement. The argument continues that this is because the transaction is presumptively fraudulent and all that need be alleged is that the convey-

ance was made without fair consideration. *Id.* at 535. *See, e.g., Feist v. Druckerman,* 70 F.2d 333, 334 (2d Cir.1934), where the Court discusses Section 273 of the N.Y. Debtor-Creditor Law, declaring: "Thus it appears that the presumption [of fraud] has no relation to actual fraud...." *Id.* at 335. Accordingly, the Trustee argues that the pleading requirements of Rule 9(b) have no application because the possibly defamatory nature of the fraud charged against defendants is minimized in a constructive fraud situation. The court in *Allegaert* similarly questioned the relevance of the particularity requirements of Rule 9(b) in declaring that a complaint need not allege a defendant's intent to defraud. *See Allegaert,* 78 F.R.D. at 430–31.

This Court likewise finds merit in these arguments and thus holds that the Trustee's complaint herein is pleaded with sufficient particularity. This is because in the instant case, the transactions are indeed presumptively fraudulent in that as pleaded, they contain some of the "badges of fraud" described by the Second Circuit in *Kaiser, supra* as establishing the requisite intent to defraud. For example, the Trustee has pleaded a lack or inadequacy of consideration, the insolvent financial condition of the defendants both before and after the transactions and a discrepancy between the value of the property transferred and the consideration received therefore. *See Kaiser, supra,* 722 F.2d at 1582–83.

C. *Motion to Dismiss Pursuant to Rule 12(b)(6)*

 Defendants also move to dismiss pursuant to Rule 12(b)(6) [6] with respect to

Code Section 548(a) [7] for failure to allege or plead which, if any, transactions may have occurred within one year of the date that OPM filed its original petition in bankruptcy. Although the Trustee has not specifically identified the date when each transaction occurred, it is sufficient to defeat a motion to dismiss that any one of the conveyances alleged could have taken place within the one-year limitations period. The particular timing of each transaction will be addressed and narrowed during discovery. This Court refuses to dismiss the complaint as long as any of the claims may fall within the time limitation imposed by Section 548(a).

D. *Motion to Strike*

In addition, defendants assert that the Trustee's third, fourth and fifth claims for relief are redundant since the plaintiff is entitled to one recovery. Defendants, therefore, seek to strike those claims for relief pursuant to Bankruptcy Rule 7012 incorporating Rule 12(f) [8] of the Federal Rules. We hold that this motion is without merit.

 Motions to strike under Rule 12(f) are not favored by the courts *see FRA S.P.A. v. Surg-O-Flex of America, Inc.,* 415 F.Supp. 421 (S.D.N.Y.1976), and they are infrequently granted. *Id.* at 427. Any doubt as to the striking of matter in a pleading should be resolved in favor of leaving the pleading unstricken. *See, e.g., Hanley v. Volpe,* 305 F.Supp. 977, 980 (E.D.

---

6. Federal Rule 12(b)(6) provides in part:
 Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted...

7. Section 548(a) provides in pertinent part:
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition...

8. Federal Rule 12(f) provides:
 Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Wisc.1969); *Walmac Co. v. Isaacs,* 15 F.R.D. 344 (D.R.I.1954).

■ In the instant case, the Trustee has alleged alternative claims for relief pursuant to the various subsections of Code Sections 544 and 548 and N.Y. Debtor-Creditor Law Section 270 *et seq.* Alternative pleading is proper pursuant to Federal Rule 8(e)[9], and it is clear that the Trustee has put forward five alternative grounds to recover one set of fraudulent transfers. Thus, the motion to strike must be denied.

Defendants rely on Rule 12(f) in arguing to strike paragraph 46 of the complaint, which reads:

> Upon information and belief, at all times hereinafter mentioned, defendant Weissman controlled the voting stock of Fundways; and managed, dominated and manipulated Fundways.

The Trustee is seeking to recover monies paid to Weissman from OPM which Weissman may have subsequently transferred to Fundways. This is in accordance with Code Section 550 which provides in pertinent part that

> [T]he Trustee may recover, for the benefit of the estate, the property transferred or if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

Since Herbert Weissman is in control of Fundways, the Trustee seeks to go beyond the corporate entity to the dominating individual.

■ Section 550 will allow a trustee to recover monies received by a subsequent transferee that were not received in good faith. *See In re Greenbrook Carpet Co., Inc.,* 22 B.R. 86, 90 (Bkrtcy.S.D.Ga.1982). The Trustee properly employs Section 550 to state a claim to recover property from any subsequent transferee to the extent

that the initial transfer can be avoided under Section 544 or Section 548.

■ A Rule 12(f) motion to strike is "not favored and will not be granted unless it is clear that the allegations can have no possible bearing on the subject matter of the litigation." *Schramm v. Krichell,* 84 F.R.D. 294, 299 (D.Conn.1979). Accordingly, the Trustee has alleged sufficient facts to sustain his claims in the alternative and the Rule 12(f) motion must be dismissed.

### E. *Applicant's Motion to Permit Late Filing of a Proof of Claim*

■ Applicants Herbert Weissman and Fundways' motion for an order permitting a late filing of a proof of claim must be denied. Rule 9006(b) of the Federal Rules of Bankruptcy Procedure provides in pertinent part:

> (b) *Enlargement.*
> (1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

The determinative inquiry in resolving the issue whether to allow the late filing is whether applicants have satisfied their burden of proving circumstances constituting excusable neglect. *See In re Oakton Beach & Tennis Club,* 9 B.R. 201, 204 (Bkrtcy.E.D. Wis.1981); *In re Goode,* 3 B.R. 207, 209 (Bkrtcy.W.D.Va.1980). *See also In re Figueroa,* 33 B.R. 298, Bankr.L.Rep. (CCH) ¶ 69,384 (Bkrtcy.S.D.N.Y.1983).

Weissman's late proof of claim would allege that OPM is indebted to him for commissions on equipment leased from OPM by Rockwell International and for the development and use of a leased property deprecia-

---

**9.** Federal Rule 8(e) provides in pertinent part: 8(e)(2). A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. . . .

tion insurance policy. OPM filed its petition in bankruptcy on March 11, 1981. Herbert Weissman and Fundways were not listed by OPM as creditors in the Petition. They claim they were unaware of this fact and claim a good faith belief that they were listed in the Petition. A bar order was entered establishing the deadline for filing proofs of claim as March 30, 1982. Applicant Weissman claims that he was not aware of this order and did not receive the notice that was served upon other creditors advising them of the need to file a proof of claim. Weissman further asserts that in November or December 1981 he attempted to call the Trustee to discuss his claims against OPM, but the Trustee was never available and did not return his calls. In the Spring of 1982, Weissman alleges that he advised the Trustee of his debt but the Trustee made no mention of the bar order.

In March 1983, applicants were served with a summons and complaint for a judgment against them for $599,062.45. Applicant Weissman asserts that this adversary proceeding was a "complete surprise," and that this action came with no warning and no explanation. The earliest date that applicants could file a motion requesting this relief was July 20, 1983.

 Applicants' motion comes before this Court sixteen months after publication of notice and fourteen months after the bar date. It is apparent that adequate notice of the bar date was given and that the delay by applicants was not due to excusable neglect. Excusing movants from their lack of diligence would seriously prejudice the estate and its creditors.

 On January 11, 1982 this Court ordered that the Trustee send notice by mail to listed creditors and, in addition, give notice by publication in each of the *Wall Street Journal* (national edition) *Datamation* and *Computer World*. It has been conceded by the Trustee that movants are not listed creditors. However, they are bound by the publication of the bar order. Notice was published in the above-described publications, and, upon questioning by this Court, applicants' attorney stated: "It would be reasonable to expect" that these publications would be read by his clients. Indeed, notice by publication is an adequate form of notice to advise a party of the entry of a bar order. *See, e.g., In re GAC Corp.*, 681 F.2d 1295 (8th Cir.1982).

The case of *In re International Coin and Currency*, 22 B.R. 123 (Bkrtcy.D.Vt.1982), is distinguishable from the instant case. In *International Coin*, the Court held that the creditors who did not receive a mailed copy of the bar order were not bound by the bar order because no publication was effectuated. That court recognized that notice by publication would have been a sufficient minimum requirement, stating: "The least that should be expected by such creditors is notice by publication . . ." *Id.* at 125.

In the instant case, no evidence has been put forth of an awareness by the Trustee of applicants' alleged creditor status prior to the expiration of the bar date. The Trustee, in a sworn affidavit, does not recall speaking with Mr. Weissman prior to March 30, 1982. He claims that it was his practice "to advise all creditors with whom [he] spoke alleging claims against the OPM etate to file a proof of claim in view of the entry of a claim bar order." The Trustee alleges he has no record of such a conversation and applicants have put forward no other proof that the Trustee was notified prior to March 30th. Weissman refers to a conversation with Mr. Hassett in the Spring of 1982 alerting him to his claim. However, Weissman displays no greater specificity in time and it is indeed possible that this alleged conversation occurred after the bar date. Where a trustee has no actual knowledge of the existence of a claim and the name and address of a claimant, it is not possible for him to give notice by mail. *City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Harbor Tank Storage Co.*, 385 F.2d 111 (3d Cir.1967). Because applicants have not demonstrated actual knowledge on the part of the Trustee, they have failed to discredit the form of notice used by the Trustee.

The standard of "excusable neglect" is a flexible one which is subject to interpretation by the trier of fact in each instance. *See In re Manning,* 4 B.C.D. 304, 305 (Bkrtcy.D.Conn.1978). The *Manning* Court, among others, has interpreted "excusable neglect" to be the "failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *Id., cited in In re Horvath,* 20 B.R. 962, 966 (Bkrtcy.S.D.N.Y.1982). *See also, In re Figueroa,* 33 B.R. 298, Bankr.L.Rep. (CCH) ¶ 69,384 (Bkrtcy.S.D.N.Y.1983). An application relying upon "excusable neglect" must cite "circumstances that are unique or extraordinary." *Maryland Casualty Company v. Conner,* 382 F.2d 13, 17 (10th Cir.1967). *See In re Standard Poultry Co., Inc.,* 5 B.R. 643, 645 (Bkrtcy.E.D.Pa.1980).

In *In re Horvath, supra,* this Court set forth factors to be considered in determining the existence of excusable neglect. They include: (1) the adequacy of the notice provided; (2) the source of the delay and the sophistication of the creditor; and (3) the prejudice, if any, that will inure to the debtor should the objection be allowed. *Id.* at 966–67. In *Horvath,* this Court denied an application for an extension of time to object to the dischargeability of a debt because "[t]he circumstances surrounding the Bank's untimely application [were] more reflective of indolence than of excusable neglect." *Id.* at 966. The bank creditor in *Horvath* cited internal administrative changes as justification for the delay in filing. In response, this Court held that this factor was "not to be considered beyond reasonable control of a sophisticated bank creditor." *Id. See In re Horn Const. and Maintenance, Inc.,* 32 B.R. 87 (Bkrtcy.S. D.Alabama 1983), where the court held that a "misunderstanding" between a creditor and its attorney as to whether the schedules filed by the debtor accurately reflected the indebtedness owed did not constitute excusable neglect. Moreover, the court in *Horvath* underscored the point that "[l]ack of control over events is essential." *Id.* This Court must now look at the instant facts in light of the factors set forth in *Horvath.*

In the instant case, the Trustee gave applicants sufficient notice of the entry of the bar order as discussed above. The source of the delay and the sophistication of the creditor will now be scrutinized. Applicants claim that they were never involved in a bankruptcy proceeding and that they have no familiarity with a Chapter 11 proceeding. They allege that the source of delay is attributable solely to the lack of notice. This Court, however, finds that Weissman is not just an ordinary creditor in an ordinary reorganization because he is no stranger to these proceedings. He is the brother of Mordecai Weissman, the former president of OPM, and he has been involved in numerous business transactions with OPM. In fact, defendants' brief in support of their motion to dismiss demonstrates that Weissman had been employed by OPM from approximately 1970 to early 1973. The brief also declares that Herbert Weissman left OPM over business disagreements with OPM's management and OPM's failure to fulfill its promise to offer him a partnership. According to defendants, since that time, Fundways and OPM continued to have business dealings with each other, including those involving Rockwell International which are the subject of a counterclaim brought by defendants. Defendants brief continues that defendants also made available to OPM a unique form of insurance to protect leasing companies from the risk of substantial decline in their equipment, which insurance is the subject of another counterclaim brought by defendants.

As the Second Circuit declared in *Kaiser, supra,* the family, friendship or close associate relationship between the parties is a "badge of fraud" which may contribute to an inference of intent to defraud. *See Kaiser, supra,* 722 F.2d at 1583. If this type of relationship is a badge of fraud, *a fortiori* this relationship demonstrates the high probability of a familiarity on the part of Weissman with these proceedings. Thus, it is unlikely that Weissman had no contact with friends and relatives who managed to

file proofs of claim prior to the expiration of the bar date. Within this context, it is difficult to believe that applicants were totally unfamiliar with the OPM proceedings. Accordingly, it is the determination of this Court that movants did indeed have such reasonable control over the events relating to this reorganization proceedings as to render it possible for them to have acted in a timely fashion. These defendants have at all times been in close proximity to OPM and the bankruptcy process.

Similarly, In re C.S.T. Const. Co., Inc., 21 B.R. 837, 839 (Bkrtcy.N.D.Ill.1982), the creditor had knowledge of a bankruptcy proceeding in time to file a timely proof of claim, but did not file a proof of claim prior to approval of disclosure statement. The Court determined that leave to file a proof of claim after the date for filing had expired would not be granted. See also In re V–M Corp., 23 B.R. 952, 957 (Bkrtcy.W.D. Mich.1982), where the debtor was held entitled to discharge an omitted claim as long as the creditor had actual knowledge of the bankruptcy proceedings. The holding of this court is relevant and instructive in this case:

> The law presumes that the prudent creditor will make inquiry as to his duties in order to share in the distribution of a debtors estate.... I find no reason to give more protection where the debtor is a corporation especially since creditors in a corporate case are likely to be more sophisticated and knowledgeable. Id. at 957.

The instant case is factually similar to V–M Corp. In V–M Corp., the creditor knew of the bankruptcy of V–M, had discussed the case with V–M's president, and has been closely involved with V–M's operations and business for many years. Thus, the court declined to allow the creditor to file a late proof of claim.

In making the determination that the debtor may not file a late proof claim, the Court is taking into account the prejudice the estate will suffer if the late proof of claim is allowed. The applicants' claims amount to a substantial sum of money. A fourteen-month reprieve would severely hamper the Trustee's administration of the estate and his reorganization efforts. In addition, permitting this exceptionally late filing would set a dangerous precedent for other creditors who similarly, and perhaps for tactical reasons, have sat on their rights without any other reasonable justification therefore.

■ In sum, it is clear that when a party fails to file in a timely manner due to a "chosen course of action and the circumstances were within the party's reasonable control," the courts will not offer relief from the choice taken. In re Gem Rail Corp., 12 B.R. 929, 931–32 (Bkrtcy.E.D.Pa. 1981); See Oakton Beach, 9 B.R. at 205; In re Valley Fair Corporation, 4 B.R. 564, 567– 68 (Bkrtcy.S.D.N.Y.1980). An extension will not be granted if the delay was due to the lack of diligence by the applicant. In re Breining, 8 B.R. 17, 21 (Bkrtcy.S.D.N.Y. 1980). In light of the facts and circumstances of the case, the instant application must fail. Movants have failed to meet the burden of demonstrating the extraordinary circumstances necessary to warrant the imposition of the doctrine of excusable neglect. See id.; Oakton Beach, 9 B.R. at 204.

## F. The Trustee's Cross-Motion to Dismiss the Counterclaims

■ The Trustee has submitted a cross-motion to dismiss the defendants' counterclaims and the eighth and ninth affirmative defenses. The transactions in question are prepetition transactions. Thus, defendants' sole remedy for asserting their right to monies owed based on prepetition debt is to file a proof of claim. The assertion of a counterclaim is not the proper vehicle for raising defendants' claims against the Trustee. The legislative history of Section 501 declares:

> In general, however, unless a claim is listed in a Chapter 9 or Chapter 11 case and allowed as a result of the list, a proof of claim will be a prerequisite to allowance for unsecured claims....

■ Furthermore, the Trustee contends and this Court agrees that defendants, by

interposing claims and defenses, seeks an affirmative recovery from the estate, or in the alternative, to set off such obligations against any eventual recovery by the Trustee on his fraudulent transfer claims. It is well established that a party will be unable to assert a setoff where that party is being sued for fraudulent transfers. *See, e.g., Bennett v. Rodman & English, Inc.,* 2 F.Supp. 355, 358 (E.D.N.Y.1932); *Irving Trust Co. v. Frimitt,* 1 F.Supp. 16 (S.D.N.Y. 1932). This is because where the party seeking to set off is being sued for fraudulent transfers, there is no mutuality of obligations, which is required under Code Section 553(a).[10] *See* 4 Collier on Bankruptcy ¶ 553.04[2] (15th ed. 1983); *See also In re J.A.G., Inc.,* 7 B.R. 624 (Bankr.D.Mass.1980).

The above-cited cases denying the right to setoff do so articulating the principle that where there is no mutuality of debt, there can be no setoff. *E.g., Irving Trust,* 1 F.Supp. at 17. The Court in *Irving Trust* reasoned that:

> These counterclaims are for moneys said to have been owing by the bankrupts for services rendered. The claim asserted by the trustee against the defendants being for fraudulent transfers, the case is not one of mutual debts or credits.... The liability of the defendants to the trustee is not a "debt".... *Id.*

Similarly, the defendants in *Bennett v. Rodman & English, Inc.,* were not permitted to set off the amounts due them at the time of the filing of the bankruptcy petition or at the time of adjudication against the payments supposedly received by them. The claims involved did not evidence the necessary "mutuality." Rather, the *Bennett* court refused to allow a setoff that would, in essence, condone and legalize a fraudulent transfer. *Bennett, supra,* at 358.

This Court thus must deny defendants' bootstrapping counterclaims on procedural and substantive grounds. Defendants can-

not "do by indirection what could not be done directly, and .... work an injustice which cannot be permitted." *Id.*

### IV. Conclusion

In conclusion, this Court denies all aspects of defendants' four-pronged motion as well as applicants' motion to file a late proof of claim. Also, the Trustee's motion to dismiss defendants' counterclaims and to strike the eighth and ninth affirmative defenses is granted.

It is SO ORDERED.

---

**10.** Section 553(a) provides in pertinent part: Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor

to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...