In re The KING'S PLACE, INC., Debtor.

The KING'S PLACE, INC., Plaintiff,

v.

The FIRST NATIONAL BANK OF STRASBURG, Defendant.

Bankruptcy No. 80–00027.
Adv. No. 80–0052.

United States Bankruptcy Court,
E. D. Pennsylvania.

Oct. 2, 1980.

Joseph H. Weiss Associates, Leonard P. Goldberger, Philadelphia, Pa., for debtor.

Jacques H. Geisenberger, Jr., and William M. Musser, III, Lancaster, Pa., for the First National Bank of Strasburg.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Defendant, The First National Bank of Strasburg [hereinafter referred to as the Bank], has filed a motion to dismiss the amended complaint of the plaintiff–debtor, The King's Place, Inc. For reasons hereinafter given, defendant's motion shall be granted in part and denied in part.[1]

The factual background, as appears from the various pleadings, is as follows: The debtor is engaged in the business of manufacturing and duplicating 8–track and cassette tapes and, for a time, was also engaged in the business of selling studio time for the recording of tapes. Amended Complaint, ¶ 2. On January 4, 1980, the debtor sought relief under Chapter 11 of title 11 U.S.C. [hereinafter referred to as the Bankruptcy Code or Code].

Count I of the amended complaint alleges that, in December of 1978, the debtor and the bank commenced negotiations for a loan to the debtor in the amount of $375,000 for various business purposes.[2]

By letter dated January 17, 1978 from Donald A. Hodgen, office manager of the

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Paragraph 7 of the amended complaint alleges:

   During the negotiations Bank had actual knowledge that the loan was needed in order to: repay corporate indebtedness for the purpose of improving cash flow and enable the King's Place to liquidate or pay its debt obliga-

tions in the normal course of business; increase inventory to take advantage of quantity discounts from various suppliers and make prompt and complete deliveries [of] customer orders; and to acquire the building in which King's Place was operating at a price that was less than its appraised value in order to permit expansion of the manufacturing facilities of King's Place, so as to reduce per unit cost and increase profit margin; acquire equipment which was being used by King's Place, pursu-

Bank's Buck office, to, we presume, the debtor, the Bank denied the debtor's request for a $375,000 business loan as proposed, but stated that that request was approved by the bank's board of directors "pending a guarantee of 90% from the Small Business Administration" [hereinafter referred to as the SBA]. No time limit on that commitment was expressly stated in that letter. Exhibit "A" to the Amended Complaint. By letter dated May 15, 1980, from Mr. Hodgen to John Yoder, president of the debtor, the bank informed the debtor that the prior approval had been withdrawn, since "the commitment was good only for ninety days," but that reapplication for the loan could be made. Exhibit "B" to the Amended Complaint. In the interim, alleges the plaintiff, the Bank did submit to the SBA the appropriate documents to obtain the guarantee and recommending its approval. Amended Complaint, ¶ 10. Paragraph 9 of the amended complaint alleges that the debtor also prepared the necessary application for submission to the SBA.

The plaintiff alleges that the existence of any "90–day time limitation was fraudulently and deliberately concealed by the Bank from" the debtor. Amended Complaint, ¶ 13. The debtor asserts that, in addition to fraud, the Bank's prior conduct also constitutes a breach by the Bank of its loan commitment.[3]

With regard to the fraud allegation, defendant's motion first prays for dismissal of Count I for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). It is defendant's contention that Rule 12(b)(6) requires that "the common law elements of fraud be set forth expressly in the complaint, Brief for Defendant at 2, and, furthermore, that plaintiff's complaint does not allege fraud with the particularity required by Fed.R.Civ.P. 9(b).[4] Id.

We conclude that Count I of plaintiff's complaint satisfies the requirements of both Fed.R.Civ.P. 12(b)(6) and 9(b).[5] In Gottlieb v. Sandia American Corp., 35 F.R.D. 223 (E.D. Pa.1964), Judge Body stated:

The authorities evince that the elements of fraud which must be pleaded with particularity are:

(1) A false representation of a material fact; [6]

(2) Knowledge of its falsity by the person making it;

(3) Ignorance of its falsity by the person to whom it is made;

(4) The intent that it should be acted upon;

(5) That it was acted upon by plaintiff to his damage.

35 F.R.D. at 224. Neither Fed.R.Civ.P. 12(b)(6) nor 9(b) requires that each element of the alleged fraud be pleaded expressly. Union Mutual Life Ins. Co. v. Simon, 22 F.R.D. 186, 187 (E.D. Pa.1958). What the rules do require is that the complaint "set forth the facts with sufficient particularity to apprise the defendant fairly of the

---

ant to lease-purchase agreements; maintain the good will of King's Place with its customers and suppliers; and continue to operate the recording studio of King's Place.

3. Both "causes of action" are contained in Count I of the amended complaint. The defendant's motion to dismiss that count is directed only to the fraud allegation.

4. Fed.R.Civ.P. 9(b) states that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

5. Whether the requirements of both these rules have been satisfied by plaintiffs is a question often presented as here, in tandem. See, e.g.,

Capitol Life Ins. Co. v. Rosen, 69 F.R.D. 83, 83 (E.D. Pa.1975).

6. Defendant contends that, in order to satisfy this element, there must be alleged "[s]omething more by way of positive, affirmative action to conceal the [90–day] time period...." Brief for Defendant at 5.

We conclude that a false representation of a material fact can occur "by speech or silence" [emphasis added], i.e., failure to disclose. See Shane v. Hollman, 227 Pa.Super. 176, 181–182, 324 A.2d 532, 536 (1974). Whether there did, in this case, exist a duty to disclose any 90–day time limitation to the plaintiff is an issue properly a subject of proof at trial.

charges made against him," *Union Mutual, supra* at 187, "so that the defendant can prepare an adequate answer to the allegations," *Denny v. Carey,* 72 F.R.D. 574, 578 (E.D. Pa.1976) (Lord, C. J.).

◼ Plaintiff's complaint adequately alleges: a fraudulent concealment by defendant (Amended Complaint, ¶ 13); that defendant's action was intentional (*id.*); that plaintiff was unaware of such concealment (*id.*); that defendant's alleged fraud was intended to be acted upon by plaintiff (*id.,* ¶ 14); and, that plaintiff suffered damage as a result thereof (*id.,* ¶¶ 15–19). We conclude that the circumstances of an alleged fraud have been stated, and so stated with sufficient particularity that defendant may reasonably be expected to be able to prepare an answer on the basis of what has been alleged in Count I. Specific details are left to discovery under the rules. *Capitol Life, supra* at 90.

◼ With respect to Count II of the complaint, which alleges that defendant "extracted" preferential transfers from the plaintiff, now allegedly recoverable under § 547 of the Bankruptcy Code (11 U.S.C. § 547 (1979)), defendant again asserts that the requirements of Fed.R.Civ.P. 12(b)(6) and 9(b) have not been met by the plaintiff.

◼ First, Fed.R.Civ.P. 9(b) is inapplicable to the preference allegation of Count II, for the reason that the particularity re-

quirement of rule 9(b) pertains to fraud or mistake, neither of which need be pleaded in an action to recover preferential transfers under § 547.[7] We conclude further that Count II in fact sets forth each element of an alleged preference under § 547 and therefore exceeds the requirements of Fed.R.Civ.P. 12(b)(6).

◼ Plaintiff has alleged in paragraph 21 of its amended complaint that the Bank was "acting in the capacity of a control person of *the business* of King's Place" [emphasis added] and so "was an insider." Defendant insists that the language of this allegation is insufficient because the Code defines insider as a "person in control of *the debtor*" [emphasis added]. 11 U.S.C. § 101(25)(B)(iii) (1979). We conclude that under the notice pleading principles of the federal rules, the plaintiff's allegation survives a Rule 12(b)(6) motion.[8] Whether the defendant was at all pertinent times an "insider" within the meaning of the Code is a matter for the presentation of evidence at trial.

◼ Defendant moves also to strike paragraph 23 of the amended complaint, pursuant to Fed.R.Civ.P. 12(f).[9] Defendant's Motion to Dismiss, ¶ 4. We have already concluded that Count II of the amended complaint, of which paragraph 23 is a part, sets forth the elements of alleged § 547 preferential transfers. Allegations of "bad faith"

---

**7.** The editors of *Collier on Bankruptcy* summarize:

> Briefly stated, the elements of a preference under § 547(b) consist of the following: (1) a transfer of the debtor's property; (2) "to or for the benefit of a creditor;" (3) "for or on account of an antecedent debt owed by the debtor before such transfer was made;" (4)"made while the debtor was insolvent;["] (5) made "on or within 90 days before the date of the filing of the petition," or "between 90 days and one year before the date of the filing of the petition" if the creditor was an insider and had reasonable cause to believe the debtor insolvent at the time of the transfer; and (6) the transfer enables the creditor to receive more than he would have received (i) if the case were a liquidation case, (ii) if the transfer had not been made, and (iii) if the claim were allowed or disallowed to the extent permitted by title 11.

4 *Collier on Bankruptcy* ¶ 547.01 (15th ed. 1980).

Fed.R.Civ.P. 9(b) may have been pertinent to Count II had plaintiff alleged the occurrence of fraudulent transfers pursuant to 11 U.S.C. § 548 (1979). However, it does not appear that plaintiff intended Count II of the complaint to serve that function. *See* 4 *Collier on Bankruptcy, supra,* ¶ 547.02.

**8.** Indeed, under notice pleading principles, with regard to the "insider" element, it would have been sufficient for the plaintiff in this case to have alleged only that the defendant was in fact an "insider," which it has done.

**9.** Fed.R.Civ.P. 12(f) provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant,

and "fraudulent conduct" are not relevant to the pleading of a § 547 action. Therefore, we shall grant defendant's motion to strike paragraph 23, pursuant to Fed.R. Civ.P. 12(f), as being immaterial and impertinent.

▇▇▇▇ The defendant also moves to "dismiss the action for failure to specifically state items of special damage contained in this Complaint," as required by Fed.R. Civ.P. 9(g). Defendant's Motion to Dismiss, ¶ 3.[10] We conclude that the averments contained in paragraphs 15–19 of the amended complaint satisfy the requirements of Fed. R.Civ.P. 9(g), because plaintiff "has been specific in alleging the kind of damages it seeks."[11] *United Insurance Co. of America v. B. W. Rudy, Inc.*, 42 F.R.D. 398, 405 (E.D. Pa.1967) (Clary, C.J.). Plaintiff has identified for defendant the nature of the damages alleged, be they ultimately characterized as general or special. We further conclude that plaintiff need not allege more than it has with respect to amount of damage, *i.e.*, "a sum in excess of $10,000.00 plus punitive damages in excess of $1,000,000.00, with interest, attorney's fees and costs." Amended Complaint, *ad damnum* clause to Count I.

immaterial, impertinent, or scandalous matter.
Paragraph 23 of the amended complaint alleges:
The preferential transfers extracted by the Bank were made in connection with a series of transactions involving the Bank's bad faith and fraudulent conduct in regarding its breach of the Loan Commitment to King's Place for Small Business Administration financing.

10. Fed.R.Civ.P. 9(g) provides, "When items of special damage are claimed, they shall be specifically stated."

11. Paragraphs 15 and 16 of the amended complaint allege:
15. As a result of the Bank's arbitrary and capricious breach of its Loan Commitment, King's Place has suffered various egregious damages including, but not limited to, the following:
(a) It has been required to pay interest charges which would have been eliminated and/or reduced;
(b) It has been prevented from ordering supplies and materials in such quantities as would have entitled it to quantity discounts;

(c) It has sustained and suffered loss of business because it could not purchase and maintain sufficient inventories and/or make timely deliveries of orders to its customers;
(d) It was forced to sell the recording studio at a significant loss and to forego future profits from its operation;
(e) It was forced to forego the purchase of the real property in which its business is located, the benefit of the appreciated value of the real property.
(f) It was forced to forego expansion of its manufacturing facilities and operations and was thereby precluded from reducing per unit cost and increasing its profit margin;
(g) It was precluded from purchasing certain equipment which it operated under lease–purchase agreements and thereby lost its equity in the equipment;
(h) It suffered damage to its good will with regard to its customers and suppliers;
16. As a further result of the breach by the Bank of its obligation and agreement, King's Place has been forced to file a Petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.