In re AHEAD BY A LENGTH, INC., Debtor.

Dorothy EISENBERG, Trustee, Estate of Ahead By A Length, Inc., Plaintiff,

v.

Irwin FEINER, Elizabeth Feiner, Nochum Sternberg, Schnejer Zalman Gurary, Z.G. International Merchandising, Zal–Tex Enterprises, Inc., Zalga Marengo Textiles, Inc., Zalga Metropolitan Textiles, Inc., Almax Continental Textiles Corp., Eva Merchandising Corporation, Firey Textile Corporation, Julia Textile Corporation, May–Line Global Textile Corp., N.S. Textiles Corporation, Skylab International Textiles, Inc., Skyview Zalga Int., Textiles, Inc., Troy International Textiles Corp., Enn Ess Textile Corp., and Orchid Fabrics, Inc.

Bankruptcy No. 83 B 11430(TLB).
Adv. No. 86–5593A.

United States Bankruptcy Court, S.D. New York.

May 19, 1989.

As Corrected May 26, 1989.

Miller, Cassidy, Larroca & Lewin, Washington, D.C., for defendant, Schnejer Zalman Gurary.

Paul K. Rooney, P.C., New York City, for defendant, Nochum Sternberg.

Shaw, Licitra, Eisenberg, Esernio & Schwartz, P.C., Garden City, N.Y., for trustee.

TINA L. BROZMAN, Bankruptcy Judge.

In this motion to dismiss the trustee's adversary proceeding, defendants Schnejer Zalman Gurary and Nochum Sternberg (collectively the Defendants) assert that the necessary elements for a civil claim under the Racketeering Influenced Corrupt Organizations Act (RICO) have not been pleaded, the fraud claims have not been pleaded with particularity, the RICO, conversion and fraudulent transfer claims are time barred, the conspiracy and punitive damage claims fail to state a cause of action and the claim for costs and attorneys' fees should be stricken.

## I.

This case was commenced on October 3, 1983, when an involuntary chapter 7 petition was filed against Ahead By A Length, Inc., the debtor. An order for relief was entered on December 6, 1983. The trustee was appointed on December 20, 1983. Some weeks prior to the bankruptcy filing, the United States Attorney had initiated a criminal investigation into the debtor's transactions. On October 24, 1985, Irwin Feiner, the principal officer, director and major shareholder of the debtor, entered a guilty plea to charges of conspiracy, tax evasion, mail fraud and wire fraud. On April 2, 1986, Gurary and Sternberg were charged, among other things, with filing false invoices and aiding and assisting tax evasion. The trustee commenced this adversary proceeding on August 26, 1986 against Gurary, Sternberg, Feiner, Feiner's wife and 15 corporations which allegedly were owned, operated, and controlled by Gurary and Sternberg.

On October 30, 1986, Gurary and Sternberg moved to compel Feiner's testimony. After the hearing on the motion, this court rendered a decision and order which stayed the adversary proceeding for six months to permit the criminal prosecution to proceed unfettered. *Eisenberg v. Feiner (In re Ahead by a Length)*, 78 B.R. 708 (Bankr.S. D.N.Y.1987). The stay held in abeyance a pending motion to dismiss. At the conclusion of the criminal prosecution, which re-

sulted in convictions of Gurary and Sternberg, the stay was lifted. When the court entertained oral argument on the motion to dismiss, the trustee sought leave to and thereafter did amend her complaint. She later requested additional time in which to further amend the complaint. On June 1, 1988, the further amended complaint (the Amended Complaint) was served and filed with the consent of Gurary and Sternberg who reserved the right to renew their motion to dismiss.

The Amended Complaint alleges that in May 1980 Feiner and Sternberg met and agreed that Sternberg and Gurary would submit phony invoices to the debtor from corporations owned by Sternberg and Gurary (the Zalga Companies). Although no goods or services were to be provided by the Zalga Companies to the debtor, Feiner agreed to cause the debtor to pay the amounts listed in the invoices. Sternberg and Gurary were to deduct a fee of approximately 5% of the face value of the invoices and remit the balance in cash to Feiner. Over the course of time, it is alleged, Feiner and his wife caused the debtor to pay about $25,000,000 based on the false invoices.

After being served with the Amended Complaint, the Defendants renewed their motion to dismiss, which is what we consider now.

## II.

Under Fed.R.Civ.P. 12(b)(6),[1] a complaint should not be dismissed for failure to state a claim on which relief may be granted unless the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 47–8, 78 S.Ct. 99, 102–3, 2 L.Ed.2d 80 (1957). When reviewing a motion to dismiss, a court should consider all factual allegations as true and in a light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and must examine the complaint to ascertain whether relief may be granted under any possible theory. *See Brubrad Co. v. U.S. Postal Service*, 404 F.Supp. 691, 693 (E.D.N.Y. 1975), *aff'd* 538 F.2d 308 (2d Cir.), *cert. denied* 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976); *Raine v. Lorimar Productions, Inc.*, 71 B.R. 450 (Bankr.S.D.N.Y.1987).

### A. Statute of Limitations

Gurary and Sternberg assert the statute of limitations as grounds for dismissing all but the fourth cause of action. On a motion to dismiss courts should be extremely reluctant to erect the statute of limitations as an insurmountable bar where the determination turns on circumstances and intentions of the parties not readily ascertainable from the facts. *Abdul–Alim Amin v. Universal Life Insurance Co.*, 706 F.2d 638, 640 (5th Cir.1983).

### 1. RICO claims

When a trustee sues in her capacity as the successor to the debtor, section 108(a) of the Bankruptcy Code, 11 U.S.C. § 108(a), affords her an extension of time. Specifically, if applicable nonbankruptcy law prescribes a statute of limitations and if the prescriptive period has not expired before the petition date, the trustee may commence the action only before the later of "the end of such period, including any suspension of such period occurring on or after the commencement of the case" or two years after the petition is filed. The first inquiry, therefore, is whether any claim which may have existed in favor of the debtor was still maintainable on the petition date.

■ The statute of limitations for RICO actions is four years. *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987) (the four year statute of limitations provided in the Clayton Act, 38 Stat. 731, as amended, 15 U.S.C. § 15b, applies uniformly to all civil RICO actions). Although the Supreme Court in *Malley-Duff* answered the question of what statute of

---

1. For ease of identification, each rule of the Federal Rules of Civil Procedure will be referred to as "Rule ___," while each rule of the Federal Rules of Bankruptcy Procedure will be referred to as "Bankruptcy Rule ___."

limitation to apply, it expressly left undecided the question of when a civil RICO claim accrues. 107 S.Ct. at 2767. Several months ago, our circuit court of appeals reviewed the conflicting decisions on the district court level and announced a governing rule.

In sum, we hold today that civil RICO actions are subject to a rule of separate accrual. Under this rule, each time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred. A plaintiff, under *Malley–Duff*, must then bring his action within four years of this accrual to recover damages for the specific injury. Naturally, as with all rules of accrual, the standard tolling exceptions apply. *See, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (class action tolling); *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1084 (2d Cir.1988) (fraudulent concealment); *Cullen v. Margiotta*, 811 F.2d 698, 721–24 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) (class action and duress).

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir.1988), *cert. denied* — U.S. ——, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989).

█ The trustee pleaded that the transactions occurred during May 1980 through October 1983 between the debtor and the Zalga Companies, corporations which she alleged Sternberg and Gurary deliberately created to have the appearance of legitimate sellers and manufacturers of piece goods when in fact they never conducted legitimate business. She also pleaded that Defendants knew that the funds to be paid to the Zalga Companies by the debtor were not to be paid in exchange for the receipt of any goods or services and were actually to be transferred without any valid consideration. In addition, the trustee alleged that when she undertook to examine Feiner pursuant to Bankruptcy Rule 2004, he refused to answer any questions, instead invoking his Fifth Amendment privilege.

This is sufficient to overcome the statute of limitations argument; the trustee may be able to prove that so many of the claims as would otherwise appear to be time-barred are, in fact, timely either because they accrued within four years before the complaint was filed or because the statute of limitations was tolled by virtue of the Defendants' fraudulent concealment. *Cf. State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1084–85 (2d Cir.), *cert. denied* — U.S. ——, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988) (in civil antitrust action, fraudulent concealment whether by defendant's affirmative acts of concealment or by nature of the wrong itself, such as rigging of bids, is sufficient to overcome a statute of limitations defense).

### 2. The other federal claims

The fraudulent concealment doctrine is not unique to the Clayton Act statute of limitations, but permeates federal law. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Its purpose is to prevent a defendant from concealing a fraud or committing a fraud which by its nature is concealed until such time as the party committing the fraud could plead the statute of limitations to protect it. *Bailey v. Glover*, 88 U.S. (21 Wall) 342, 349, 22 L.Ed. 636 (1874). The Court in *Bailey* laid out the elements of the doctrine, stating

when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

*Id.* (21 Wall) at 349–50.

█ To toll a federal statute of limitations pursuant to the fraudulent concealment doctrine, the plaintiff must establish (1) that the defendant concealed from him the existence of the claim, (2) that he remained in ignorance of that claim until some point within the applicable limitations period and (3) that his continuing ignorance

was not attributable to lack of diligence on his part. *Hendrickson,* 840 F.2d at 1083. The test of due diligence is an objective one requiring the plaintiff to investigate a situation when inquiry would reasonably be believed to develop the truth. *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983).

The Defendants contend that because the trustee has not demonstrated her due diligence in seeking to learn the facts which would have disclosed the fraud, the tolling doctrine must be determined to be inapplicable. *See Arneil v. Ramsey,* 550 F.2d 774, 781 (2d Cir.1977) (case superseded by statute on other grounds). What Defendants ignore is that their motion is not one for summary judgment.[2] Since the motion is one to dismiss, the trustee need not prove her due diligence. The test is whether the facts alleged, if proven, would support any theory. As previously discussed, the trustee's allegations are sufficient to support a fraudulent concealment theory. *See McColley v. Rosenberg (In re Candor Diamond Corp.),* 76 B.R. 342, 351 (Bankr. S.D.N.Y.1987) citing *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985).

*3. The State law fraudulent transfer claims*

Without naming her theories, the trustee alleges that the acts of the Defendants constituted transfers which are fraudulent under New York law, apparently as both constructive and actual fraud. The trustee is entitled to assert these theories because of section 544(b) of the Code, which allows her to avoid any transfer of an interest of the debtor in property that is voidable under applicable law by an unsecured creditor with an allowable claim. To successfully borrow the applicable law, the trustee must have commenced suit within two years of her appointment, 11 U.S.C. § 546(a)(1), unless the statute of limitations is tolled under the *Bailey* doctrine,[3] on a cause of action which was viable under the applicable law on the date that the bankruptcy petition was filed. *See Austrian v. Williams,* 198 F.2d 697 (2d Cir.), *cert. denied* 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952); *Dabney v. Levy,* 191 F.2d 201, 204–05 (2d Cir.), *cert. denied* 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665 (1951); *accord Hooper v. Mountain States Securities Corp.,* 282 F.2d 195, 205–06 (5th Cir.1960), *cert. denied* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); *contra Wells v. Place,* 92 F.Supp. 477 (N.D. Ohio 1950). Since the court has concluded that enough has been pleaded to allow resort to *Bailey,* what remains is to determine the viability of the claims.

(a) *Actual fraud*

Where actual fraud is alleged under New York law, the time within which the action must be commenced is the longer of six years from the commission of the fraud or, if discovery of the fraud is delayed, two years from discovery or the time when with reasonable diligence the fraud could have been discovered. CPLR §§ 203(f) and 213(8) (McKinney Supp.1989); *see IIT v. Cornfeld,* 619 F.2d 909, 928–29 (2d Cir.1980); 1 J. Weinstein, H. Korn and A. Miller, *New York Civil Practice,* ¶ 213.25 at 2–177 (1988). Given that the entire fraudulent scheme began fewer than six years before the bankruptcy petition was filed, the complaint is not subject to dismissal on the basis that the claims were time-barred prior to bankruptcy.

---

**2.** The trustee's argument, that by virtue of her submission of an affidavit the motion was automatically transmogrified into one for summary judgment, is not correct. Pursuant to Rule 12(c), if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. It is clear that the court has the discretion, but is certainly not bound, to convert the motion into one for summary judgment so long as matters outside the pleadings are not considered. 2A J. Moore, *Moore's Federal Practice,* ¶ 12.15 at 12–109–110 (2d ed.1987). Here, the court has not considered matters outside the pleadings and has not afforded the Defendants an opportunity to respond.

**3.** The *Bailey* doctrine is applicable to both constructive and actual fraud. *Newburger, Loeb & Co., Inc. v. Gross,* 365 F.Supp. 1364, 1373 (S.D.N. Y.1973); *Candor Diamond,* 76 B.R. 342.

### (b) Constructive fraud

Where constructive fraud is alleged under New York law, the time within which the action must be commenced is six years from commission of the fraud. CPLR § 213(1) (McKinney Supp.1989); 1 J. Weinstein, H. Korn and A. Miller, *New York Civil Practice,* ¶ 213.25 at 2–177 (1988). Because the earliest constructively fraudulent act occurred fewer than six years prior to the bankruptcy, the constructive fraud claim was viable at the time of bankruptcy.

### 4. Conversion

The final statute of limitations challenge is to the claim for conversion. As discussed above, section 108(a) of the Code affords the trustee, in her capacity as successor to the debtor, the longer of the state statute of limitations, including its tolling provisions, or two years after the petition is filed. Under the applicable state law, an action for conversion must be commenced within three years of the time the action accrues, which is when the conversion occurred. CPLR § 214 (McKinney 1989); *Rodgers v. Roulette Records, Inc.,* 677 F.Supp. 731, 736 (S.D.N.Y.1988) citing *Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 462 N.Y.S.2d 413, 416, 448 N.E.2d 1324, 1327 (1983). To the Defendants' assertion of the statute of limitations, the trustee invokes the doctrine of equitable estoppel, which is based on the principle that no man will be permitted to take advantage of his own wrongdoing to defeat the ends of justice. *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 232–33, 79 S.Ct. 760, 761–62, 3 L.Ed.2d 770 (1959). It is applied to prevent a party from asserting as a defense to a claim that the applicable statute of limitations has run. *Zola v. Gordon,* 685 F.Supp. 354, 361 n. 6 (S.D.N.Y.1988).

The doctrine is employed in two circumstances, either when the party against whom it is asserted has by affirmative representations or conduct induced another to postpone suit on a known cause of action, *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978), or has fraudulently concealed the cause of action

from the plaintiff. *General Stencils, Inc., v. Chiappa,* 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966); *see also Knaysi v. A.H. Robins Co.,* 679 F.2d 1366, 1368, *reh'g denied,* 688 F.2d 852 (11th Cir.1982), quoting *Parsons v. Dep't of Transportation,* 74 Misc.2d 828, 344 N.Y.S.2d 19 (Sup. Ct.1973) and cases cited. "Fairly read, *Chiappa* stands for the general proposition, resting on estoppel principles, that a defendant who commits affirmative wrongdoing should not be afforded the benefits of the statute of limitations defense." *Kunstsammlungen Zu Weimar v. Elicofon,* 678 F.2d 1150, 1163 n. 23 (2d Cir.1982).

The first basis for equitable estoppel is not available here. The second, fraudulent concealment, is, unless the Defendants are correct in their theory that the trustee is saddled by Feiner's participation in the wrongdoing. The Defendants rely on *Sedco International, S.A. v. Cory,* 683 F.2d 1201 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982), for the general proposition that a party who engages in a fraudulent scheme forfeits all rights to protection, either at law or equity.

Although it is true that a bankruptcy trustee is a successor to the debtor's property and for many purposes is deemed to be in privity with the debtor, that privity is not complete. *See, e.g., Gray v. Fill (In re Fill),* 82 B.R. 200, 217 (Bankr.S.D.N.Y. 1987) (trustee is not precluded by principles of *res judicata* or collateral estoppel from attacking as fraudulent a collusive *in personam* default judgment granted before bankruptcy against the debtor); *Coleman v. Alcock,* 272 F.2d 618 (5th Cir.1959) (trustee is not bound by a state court judgment declaring that certain transfers were not a fraud on a particular judgment creditor). In the context of objections to claims, the law is clear that a trustee may, where there is fraud, collaterally attack a judgment. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.,* 249 F.2d 221 (2d Cir.1957).

Were a trustee to be always considered the alter ego of the debtor, recovery by a trustee from whom fraudulent transfers

were concealed when the transfers were made with the intent to hinder, delay or defraud existing or future creditors would be virtually impossible given that the debtor's bad intent is an element of the fraudulent transfer claim. But where, as here, it is alleged that a debtor is a victim, rather than a beneficiary, of a fraud, see point II(C), *infra*, it is inappropriate to declare that equitable estoppel cannot lie to defeat the statute of limitations defense, for to do so would be to reward the guilty wrongdoer and punish the innocent creditors, a result peculiarly at odds with *Chiappa*.

## B. Rule 9(b); Lack of Particularity

A threshold issue is whether the Amended Complaint pleads the fraud elements underlying the RICO, fraud and fraudulent conveyance claims with the particularity required by Rule 9(b), made applicable by Bankruptcy Rule 7009. Rule 8(a) in pertinent part provides that "A pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief ..." This requires that the allegations contain a concise statement which apprises the adverse party of the nature of the claim. Where fraud is alleged, the complaint must provide more detailed notice; the circumstances constituting fraud must be stated with particularity. *See* Rule 9(b). The particularity requirement exists primarily to discourage the filing of frivolous suits, *LaRoe v. Elms Securities Corp.*, 700 F.Supp. 688 (S.D.N.Y.1988), and to provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Ross v. A.H. Robins*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (citations omitted). Generally, a fraud claim is sufficient when it sets forth the time, place, particular contents of the false representations, the identity of the party making the false representations, and the consequences of the misrepresentation. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

Gurary and Sternberg argue that the Amended Complaint is deficient because a majority of the trustee's allegations are based upon information and belief. In support of their argument, they cite *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972) and *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir.1987). They also assert that the trustee has not pleaded the predicate acts of mail and wire fraud because she has failed to heed the mandate of *Chambers Development Co., Inc. v. Browning–Ferris Industries*, 590 F.Supp. 1528, 1537 (W.D.Pa.1984), that she specify what was mailed or communicated through the wires, when they were used and which person used them. Finally, the Defendants contend that the RICO conspiracy claim is insufficient under Rule 9(b) because it fails to identify each participant's role in the conspiracy. *See Chambers* at 1538.

In a bankruptcy case where the trustee or a third party outsider to the fraudulent transaction is pleading the fraud on secondhand knowledge for the benefit of the estate and all of its creditors, greater liberality is generally afforded in the pleading of fraud than in a civil suit. *See Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.)*, 32 B.R. 199, 203 (Bankr.S.D.N.Y.1983); *Huntington Nat'l Bank v. Schwartzman (In re Schwartzman)*, 63 B.R. 348, 355 (Bankr.S.D.Ohio 1986). Courts have thus held that the complaint must " 'set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him'... 'so that the defendant can prepare an adequate answer to the allegations.' " *O.P.M. Leasing*, 32 B.R. at 203 citing *King's Place, Inc. v. First Nat'l Bank (In re King's Place)*, 6 B.R. 305, 307–08 (Bankr. E.D.Pa.1980). A strict interpretation of Rule 9(b) in circumstances where the details of the scheme are peculiarly within the knowledge of the defendants would be inappropriate. *See Denny v. Carey*, 72 F.R.D. 574, 580 (E.D.Pa.1976).

### 1. Information and belief

Pleading on information and belief is usually inadequate to meet the particu-

larity requirement. *See Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). But "a fraud pleading that concerns matters peculiarly within the adverse party's knowledge, will satisfy the 9(b) requirements if accompanied by a statement of facts upon which the belief is founded." *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 631 F.Supp. 335, 348 (S.D.N.Y.1986), *aff'd* 818 F.2d 240 (2d Cir.1987) and cases cited; *see also Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *DiVittorio,* 822 F.2d at 1247.

That burden has been met here. Rule 9(b) prevents the filing of a complaint as a pretext for discovery of unknown wrongs. 2A J. Moore, *Moore's Federal Practice,* ¶ 9.03[1] at 9–33 (2d ed.1987) quoting *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). The Amended Complaint is far from a pretext for discovery, describing in detail a fraudulent scheme for bilking the debtor and its creditors of large sums of money through a phony invoice scheme. Each claim incorporates the allegations of fact. The period of time during which the entire scheme occurred is described. A schedule is provided which itemizes many of the transactions complained of and the dates upon which they occurred, beginning in June 1980 and continuing through February 1982.

As participants in the scheme, the Defendants have first hand knowledge of the acts described. Accordingly, the trustee having established the basic framework of the fraud, she should be permitted to flesh out the allegations in the complaint through discovery. *Hassett v. Weissman (In re O.P.M. Leasing Services, Inc.),* 35 B.R. 854, 862 (Bankr.S.D.N.Y.1983) *aff'd in part, rev'd in part on other grounds,* 48 B.R. 824 (S.D.N.Y.1985).[4] Therefore, the trustee's Amended Complaint, even though pleaded on information and belief, does not violate Rule 9(b).

## 2. Particularity in the description of the fraud and RICO claims

Although there is a relaxed standard applicable to pleadings by bankruptcy trustees, the particularity requirement is not eliminated. *Devaney,* 813 F.2d at 569. Even where a relaxed standard is appropriately employed, each defendant is entitled to be apprised of the nature of his alleged participation in the fraud. *DiVittorio,* 822 F.2d at 1247.

The Amended Complaint passes muster. It alleges that Feiner met with Sternberg on May 1, 1980 in Feiner's office and agreed that Sternberg and Gurary would supply invoices to the debtor for payment (¶¶ 31 and 32); that Sternberg and Gurary agreed to supply invoices from the defendant corporations for which no goods or services would be provided (¶ 33); that Feiner agreed at the meeting to pay Sternberg and Gurary a fee of 5% of the face value of the invoices (¶ 34); that Sternberg and Gurary knew that no goods or services would be provided to the debtor by the Zalga Companies which Sternberg and Gurary controlled and which were to receive the debtor's funds (¶¶ 27, 28 and 35); that nearly 700 of the contemplated transactions were carried out over a three year period, the details for many of which are provided (¶¶ 36–38); that Sternberg and Gurary obtained through the Zalga Companies $19,753,400 between March 1, 1980 and February 28, 1982 and additional sums up until bankruptcy (¶¶ 39 and 40); that Sternberg and Gurary cashed $25,000,000 of the debtor's checks and returned to the Feiners cash and bearer bonds in the amount of $23,000,000 (¶¶ 41 and 42); that defendants in each one of the transactions caused the invoice or other related documentation to be sent through the mail and caused the improperly paid funds to be transmitted by wire communication in interstate commerce (¶¶ 43 and 44); and that the individual defendants knowingly participated in, had knowledge of and planned

---

**4.** The contention that the trustee has had three years in which to garner the facts through discovery is disingenuous given the stay which this court imposed at the behest of the United States Attorney.

the scheme set forth in the Amended Complaint (¶ 63). These allegations are sufficient to meet the standards described in *DiVittorio; see also Lazzaro v. Manber*, 701 F.Supp. 353, 372–73 (E.D.N.Y.1988) ("Moreover, where, as here, a conspiracy is alleged, 'great leeway' is allowed since, by the nature of conspiracy, details may not be readily known at the time of pleading . . . This principle is especially applicable [where] . . . the particulars of such frauds are generally exclusively within defendants control." citations omitted.)

It is not necessary that the trustee plead detailed evidentiary matter. *A.H. Robins Co.*, 607 F.2d at 547 n. 20. Where, as here, it is alleged that the transactions involved cover a long period of time, pleading on information and belief without specifics as to each and every transaction is often permissible. *See* 2A J. Moore, *Moore's Federal Practice*, ¶ 9.03[1] at 9–29, and n. 14 (2d ed.1987). Since the trustee, a stranger to the fraudulent scheme, has specified so many of the transactions in detail in her schedule, the Amended Complaint is certainly adequate. *Cf. O.P.M. Leasing Services, Inc.*, 35 B.R. at 862 (requiring detail of over 150 transactions spanning six year period would unduly lengthen complaint in violation of Rule 8(a) and would unduly burden trustee); *see also Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061 (S.D.N.Y.1983); *Lazzaro*, 701 F.Supp. at 371–72. ("Although specific dates for such communications have not been alleged, the court is satisfied that the complaint approximates such events . . . with sufficient particularity to survive this motion to dismiss.")

## C. Fraud

The five elements which must be alleged in order to state a fraud claim under New York law are: (a) misrepresentation of a material fact; (b) falsity of the representation; (c) scienter; (d) reliance; and (e) damages. *Mallis v. Banker's Trust Co.*, 615 F.2d 68 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Raine v. Lorimar Productions, Inc.*, 71 B.R. 450 (Bankr.S.D.N.Y.1987).

The Defendants contend that the misrepresentation allegations are inadequate because not specifically attributed to Gurary or Sternberg. Only a hypertechnical reading gives rise to Defendants' argument. The Amended Complaint alleges that the "defendants" (not defined, as in this decision, as Sternberg and Gurary) knowingly caused false and fraudulent invoices to be presented for the sole purpose of defrauding the debtor; that the presentation of the false invoices to the debtor which constituted a demand for payment of goods which were never delivered or intended to be delivered was a misrepresentation of a material fact; and that the invoices were representations that goods had been sold and/or delivered to the debtor and were false and known to be false when presented to the debtor with and as a demand for payment (¶¶ 67–69). Whereas the particular defendants are not identified, the only defendants other than the Feiners (who operated the Debtor) are Sternberg and Gurary and their alter ego corporations (¶¶ 27 and 65). Thus it is clear in context that the "defendants" refers to Sternberg and Gurary and/or the Zalga Companies.

Citing *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982) the Defendants urge that because the debtor had knowledge of and participated in the scheme it cannot also be a victim entitled to recover damages. For in such a case, the argument runs, the debtor cannot have relied on the truth of the fraudulent representation, and such reliance is an essential element of fraud. Persuasively, the trustee counters that the Amended Complaint alleges that the monies were misappropriated from the debtor with the knowledge of Sternberg and Gurary and were delivered to the Feiners. Thus, the debtor is cast in the role of victim rather than participant. *See Schacht v. Brown*, 711 F.2d 1343 (7th Cir.), *cert. denied* 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983).

In *Schacht*, the court distinguished between cases like *Cenco* where the princi-

pals turn the company into an engine of theft and cases where fraud is committed against the corporation. Taking the allegations of the Amended Complaint as true, *Schacht* would apply and the attempt to impute the fraud of the Feiners to the trustee on the facts as alleged must fail. For it is a basic tenet of corporate law that " 'a corporation is a creature of the law endowed with a personality separate and distinct from that of its owners ...' " *Boise Cascade Corp. v. Wheeler*, 419 F.Supp. 98, 102 (S.D.N.Y.1976), *aff'd* 556 F.2d 554 (2d Cir.1977) citing *Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991, 994 (5th Cir.), *cert. denied* 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972).

### D. Fraudulent Conveyance

#### 1. *Constructive fraud*

█ Aside from the statute of limitations argument and the argument that the Feiners' complicity precludes recovery for fraud, both of which were already addressed, the Defendants advance one further argument for dismissing the state law constructive fraud claim—that they provided fair consideration for the transfers, specifically, massive (illegal) tax deductions for payment of phony invoices. The concept of fair consideration under Section 272 of the New York Debtor and Creditor Law (Debtor and Creditor Law) embraces two separate concerns, value and good faith. Good faith is required of both the transferor and transferee and demands honest, open and fair dealing. *See Pereira v. Checkmate Communications Co., Inc., (In re Checkmate Stereo and Electronics, Inc.)*, 9 B.R. 585, 617 (Bankr.E.D.N.Y.1981) *aff'd* 21 B.R. 402 (E.D.N.Y.1982).

Because section 272 is identical to section 3 of the Uniform Fraudulent Conveyance Act, the New York courts have looked to section 3 cases. *See, e.g., Spear v. Spear*, 101 Misc.2d 341, 421 N.Y.S.2d 277 (Sup.Ct. 1979); *Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 411 N.Y.S.2d 945 (2d Dep't 1978). Both these courts referred to *Sparkman and McLean Co. v. Derber*, 4 Wash.App. 341, 481 P.2d 585 (1971) which

held that "a person seeking to set aside a conveyance upon the basis of lack of 'good faith' must prove that one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will, hinder, delay or defraud others. The term 'good faith' does not merely mean the opposite of the phrase 'actual intent to defraud.' ... The lack of good faith imports a failure to deal honestly, fairly, and openly." *Jeremias*, 411 N.Y. S.2d at 949; *Spear*, 421 N.Y.S.2d at 282. The trustee has alleged that the debtor paid out $25,000,000 for no consideration. She has further alleged that the Defendants acted in bad faith and with actual intent to defraud the debtor (¶ 66). It is certainly plausible that good faith may be lacking.

#### 2. *Actual fraud*

█ Defendants assert a meritorious challenge to the actual fraud claims which the trustee apparently intended to plead under federal and state law. The seventh claim for relief is alleged to be brought under Code section 548 without reference to any particular subsection thereof, and the eighth claim for relief is alleged to be brought under Debtor and Creditor Law section 270 and the sections following, without reference to any particular section of that article. Defendants rightly point out, however, that the trustee has failed to allege that the transfers were made with the intent to hinder, delay or defraud existing or future creditors.[5] In other words, she has failed to state a claim for actual fraud.

Nonetheless, the facts constituting the fraudulent scheme have been laid out in sufficient detail to fairly apprise Defendants of the nature of the conduct, transactions and occurrences of which the trustee complains. The trustee has alleged that the transfers prevented the debtor from timely paying its legitimate debts, forced

---

**5.** Paragraph 66 alleges an intent to defraud the debtor, but no one else.

the debtor into insolvency and precipitated the filing of an involuntary bankruptcy petition against the debtor (¶ 86). She has alleged that the Feiners and the Defendants concocted a scheme intended to defraud and denude the Debtor of its assets, that the Defendants acted in bad faith (¶ 66) and that the debtor was seriously injured by the Defendants' actions. All of this is adequate to put Defendants on notice of the existence of her claims for actual fraud. The failure to explicitly allege the requisite intent under the statutes does not warrant dismissal but rather amendment of the seventh and eighth claims for relief. *See Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.)*, 32 B.R. 199, 204 (S.D.N.Y.1983); 6 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, § 1497 (Supp.1988) (one of the functions of Fed.R.Civ.P. 15 is to allow amendments to expand or cure defective pleadings which fail to state a claim; the approach that reflects the liberal policy of Rule 15(c) is to determine whether the adverse party, viewed as a reasonably prudent man, ought to have expected that the character of the original pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question).

## E. Civil Conspiracy

■ The trustee's sixth claim for relief alleges that all defendants conspired to convert to their own use monies properly belonging to the debtor. Gurary and Sternberg argue that New York does not recognize a separate cause of action for civil conspiracy. And in this they are correct. *See Louis Marx & Co., Inc. v. Fuji Seiko Co., Ltd.*, 453 F.Supp. 385, 392 (S.D.N.Y.1978) and cases cited. However, a tort is recognized in limited circumstances, the courts holding that "a defendant may be held liable in tort for conspiracy 'to do an

unlawful thing, or to do a lawful thing in an unlawful manner.'" *Arlinghaus v. Ritenour*, 622 F.2d 629 (2d Cir.), *cert. denied*, 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980), quoting 8 N.Y.Jur., Conspiracy § 1, at 494 (1959); *Ahmed v. Nat'l Bank*, 572 F.Supp. 550, 554 (S.D.N.Y.1983). This exception permits a plaintiff to recover for the overt acts committed as part of the conspiracy, not for the mere fact of the conspiracy itself. *See Sterling Nat'l Bank & Trust Co. v. Federated Dep't Stores, Inc.*, 612 F.Supp. 144, 146 n. 1 (S.D.N.Y. 1985) and cases cited. The exception is available here.

## F. RICO Claims

Three civil RICO claims are pleaded in the Amended Complaint under 18 U.S.C. § 1962(c) and (d).[6] The first claim for relief speaks of mail fraud; the second, wire fraud; and the third, conspiracy. The Defendants move to dismiss based on their assertion that there are no factual allegations in the complaint to support these charges. The elements necessary to establish a valid RICO claim in violation of 18 U.S.C. § 1962(c) are (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *see also Cullen v. Margiotta*, 811 F.2d 698, 712–13 (2d Cir.), *cert. denied sub nom. Nassau Co. Republican Comm. v. Cullen*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

### 1. Conduct

■ The conduct element is fulfilled when, "(1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." *United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101

---

**6.** Section 1962(d) provides "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." Defendants' motion to dismiss states that the trustee has failed to allege the elements of a violation of RICO as set forth in § 1961 and

their memoranda focus solely on the factors necessary to establish a violation of § 1962(c). Thus, it appears that they are not moving to dismiss the § 1962(d) claim on grounds different from those asserted for dismissal of the § 1962(c) claims.

S.Ct. 3109, 69 L.Ed.2d 971 (1981). The trustee has met her burden, having alleged the following: (1) the debtor, apart from and together with the Zalga Companies, ostensibly formed for the purpose of purchasing goods from the Debtor, constituted an enterprise (¶ 29);[7] (2) Gurary and Sternberg incorporated, controlled and operated the Zalga Companies (¶¶ 27, 28, 41 and 42); (3) Gurary and Sternberg were principal shareholders, directors and signatories on the bank accounts of most, if not all, of the Zalga Companies (¶¶ 10 and 11); (4) Gurary and Sternberg agreed to supply invoices from the Zalga Companies knowing that no goods, services or any valid consideration was underlying them, for which Gurary and Sternberg would receive approximately 5% of the face value of the invoices (¶¶ 33–35); and (5) Gurary and Sternberg engaged in nearly 700 transactions with the Feiners involving bogus invoices on account of which the Zalga Companies received and cashed $25,000,000 of the debtor's checks, returning $23,000,000 to the Feiners (¶¶ 36–42).

### 2. Enterprise

■ Gurary and Sternberg contend that because the Zalga Companies are named defendants, they cannot be part of the enterprise. *See Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). But the Second Circuit has carved out an exception where the "person" who participates in the affairs of the enterprise was one of several entities of which the enterprise is comprised. *Cullen v. Margiotta*, 811 F.2d 698. As stated in *Cullen* at 729–30, there is "no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise' ... Thus, though we rejected in *Bennett* the notion that an entity may be deemed 'associated with' only itself, there is neither a conceptual nor a doctrinal difficulty in positing an entity associated with a group of which it is but a part." This is precisely what the trustee has alleged.

■ Perhaps anticipating this conclusion, the Defendants urge that the RICO and fraud claims must nevertheless fail since the members of an enterprise must share a common purpose and work as a unit to achieve that purpose. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981); *Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061, 1067 (S.D.N.Y.1983). This challenge is far stronger.

It is impossible from the face of the Amended Complaint to understand just what the trustee alleges to be the enterprise. Paragraph 29 refers to the debtor alone as well as together with the defendants as a single enterprise. Yet paragraphs 51 and 57 refer to more than one enterprise. We cannot tell whether the trustee means to plead that there was one enterprise or two, nor can we tell whom she means to plead as the members of the enterprise. Moreover, as stated in footnote 7, we cannot fathom the purpose of the enterprise. These flaws, however, do not appear to be fatal. The trustee may replead to clarify the ambiguities and apparent inconsistencies in the Amended Complaint, such that the complaint will contain the clear and concise statement required by Rule 8(a).

■ Defendants also contend that the trustee has failed to allege that the enterprise was a continuing one. No longer in this Circuit is there any requirement that continuity be pleaded as a prerequisite to pleading the existence of an enterprise. *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.1989) (*en banc*) *petition for cert.*

---

7. This allegation is difficult to understand. On the one hand the trustee alleges that the fraudulent scheme consisted of the Zalga Companies' supplying phony invoices which the debtor paid (¶¶ 33–42). On the other hand, paragraph 29 alleges that the Zalga Companies were ostensibly formed to purchase goods *from* the debtor. If the Zalga Companies were ostensible purchasers of goods *from* the debtor, rather than sellers of goods *to* the debtor, then why would the debtor be paying the Zalga Companies' invoices?

Paragraph 30 is equally obscure. If no goods were delivered to the debtor by the Zalga Companies, then how were goods purchased and distributed in interstate commerce?

*filed,* March 7, 1989; *U.S. v. Indelicato,* 865 F.2d 1370, 1381–83 (2d Cir.1989) (*en banc*).

■ Because *Indelicato* and *Beauford,* which were issued after this motion was briefed, have shifted the continuity inquiry to the pattern requirement, we digress a moment to explore whether that requirement has been met for pleading purposes. In *Beauford,* it was claimed that the sponsors and certain of their professionals who were converting a large apartment complex into condominiums engaged in a pattern of racketeering activity when they mailed conversion offering plans and plan amendments containing material misstatements to some 8000 tenants and to other prospective purchasers. Clearly the scheme had an ending point; nonetheless the *en banc* court held that a pattern was sufficiently alleged to withstand the motion to dismiss. It stated

> we conclude also that a RICO pattern may be adequately pleaded without an allegation that the scheme pursuant to which the racketeering acts were performed is an ongoing scheme having no demonstrable ending point. We reach this conclusion because nothing in the statute or the legislative history reveals an intent to require such an open-ended scheme. What is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic. In *Indelicato,* we found the threat of continuity inherent in the criminal nature of the enterprise at whose behest the three related murders were committed. Were the same type of enterprise alleged here, we would have no difficulty in finding a sufficient allegation of the threat of continuity needed to show a pattern. When, however, there is no indication that the enterprise whose affairs are said to be conducted through racketeering acts is associated with organized crime, the nature of the enterprise does not of itself suggest that racketeering acts will continue, and proof of continuity or the threat of continuity of racketeering activity must thus be found in

some factor other than the enterprise itself.

> 865 F.2d at 1391. Here, the criminal nature of the enterprise itself through which the government was to be defrauded of taxes by virtue of bogus business expenses is arguably enough to constitute a pattern. But, in any event, the allegation that hundreds of phony invoices were transmitted and paid over a course of years until the involuntary bankruptcy petition was filed is sufficient to overcome any argument that what was pleaded was sporadic or isolated activity as a matter of law and insufficient to sustain the complaint.

■ Quoting from the Supreme Court decision in *Sedima,* 473 U.S. at 495, 105 S.Ct. at 3284, which establishes that a party "only has standing if, and can only recover to the extent that, he was been injured in his business or property by the conduct constituting the violation," the Defendants urge that the trustee (1) lacks standing because there was no cognizable injury to the debtor, given that the debtor participated in the fraud and (2) as a representative of the creditors, has not alleged any injury to the creditors caused by the RICO violation. In further support of their position, the Defendants cite *Cenco,* 686 F.2d at 457, for the proposition that RICO claims may only be asserted on behalf of the company's owner, its customers and competitors, and not on behalf of those who supply equipment or financial or legal services.

■ The trustee undeniably has standing to assert a RICO claim on behalf of the debtor for harm done to the corporation itself. But she may not raise a creditor's claim directly, even though in a bankruptcy, a recovery for the corporation is a recovery for its creditors. *See Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222, 1225 (8th Cir.) *cert. denied sub nom. Jacoway v. Anderson,* — U.S. —, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (if the claim sued upon is personal to the creditors, it does not become property of the estate under 11 U.S.C. § 541 and is not enforceable by the trustee under 11 U.S.C. § 704, nor may the

trustee recover under 11 U.S.C. § 544).[8] This is because the trustee, unless she is exercising her statutory avoidance powers, stands in the shoes of the debtor and may only institute whatever actions the debtor could have brought itself. *See Bankers Trust*, 859 F.2d at 1101 (where creditor is directly injured by predicate acts, the right to recover for that injury belongs not to the debtor or its estate, but to the creditor, even though the debtor may have its own claim for identical injuries and a similar right of recovery); *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986) (where plaintiff corporation alleged that it suffered damages from the fraud of a director of a debtor corporation, plaintiff has a right to recover separate from any claim the debtor may have); *Zimmerman v. Duggan*, 86 B.R. 47, 50 (E.D.Pa.1988) (RICO claims brought by trustee on behalf of the debtor were not dismissed, but claims brought directly on behalf of the debtor's shareholders and creditors were dismissed); *cf. Henderson v. Buchanan (In re Western World Funding, Inc.)*, 52 B.R. 743, 775 (Bankr.D.Nev. 1985). Each RICO claim in the Amended Complaint alleges that "the Estate of Ahead By A Length, Inc. has been injured ..." Although inartfully pleaded, the Amended Complaint seems to be referring to a cognizable injury to the debtor. Accordingly, the standing challenge must be rejected.

### G. Punitive Damages

The Amended Complaint improperly sets forth a separate cause of action for punitive damages. Recognizing this, the trustee has requested that paragraph 95 of the Amended Complaint be deemed to be "alleged in conjunction with each of the eight claims set forth in paragraphs 1 through 93 and that with respect to each, punitive damages in the amount of $39,506,800 are demanded as set forth in paragraph 96 of the complaint." Affidavit of Dorothy Eisenberg, July 26, 1988 at ¶¶ 14 and 15. The Defendants object to this method of amending the complaint. Rule 15 and its bankruptcy cognate, Bankruptcy Rule 7015, provide that after a responsive pleading is served, a pleading may be amended only by leave of court or written consent of the adverse party. Since we are granting leave to replead, we will permit the amendment subject to the right of Defendants to seek dismissal.

### H. Attorneys' Fees

The trustee concedes that the demand for attorneys' fees should be stricken with regard to the fourth through eighth claims for relief because there is no statutory provision permitting the award of such fees in such actions. *See Lewis v. S.L. & E., Inc.*, 629 F.2d 764, 773 (2d Cir.1980) and *Green v. Potter*, 51 N.Y.2d 627, 630, 435 N.Y.S.2d 695, 696, 416 N.E.2d 1030, 1031–32 (1980). However, she suggests that section 276–a of the Debtor and Creditor Law expressly and unequivocally provides for the award of attorneys' fees in actions by a trustee in bankruptcy to set aside conveyances which are found to have been made with actual intent to hinder, delay or defraud present or future creditors. Because we have concluded that the Amended Complaint does not plead actual intent, the claim for attorneys' fees must be dismissed but without prejudice to repleading if and when the trustee further amends the complaint to allege transfers made with the requisite intent.

The trustee is given 20 days from entry of an order consistent with this opinion to amend the complaint as discussed above. SETTLE ORDER.

---

**8.** This is not to say that a trustee may never recover for an estate a claim which belongs to all the creditors, rather than to one creditor or a group of creditors. If applicable law permits a corporation to pierce its own veil, a trustee may assert the claim which redounds to the benefit of all creditors. *See Green v. Bate Records, Inc. (In re 10th Avenue Record Distributors, Inc.)*, 97 B.R. 163 (S.D.N.Y.1989).